**In re GRAND JURY TESTIMONY OF ATTORNEY X.**

**No. 85 C 2504.**

United States District Court, E.D. New York.

Nov. 12, 1985.

Raymond J. Dearie, U.S. Atty., E.D. of N.Y., Brooklyn, N.Y., Edward A. McDonald, Attorney-in-Charge, Organized Crime Strike Force, E.D. of N.Y. (Norman Bloch, of counsel), Brooklyn, N.Y., for U.S. of America.

Kostalanetz & Ritholz (Robert S. Fink, Elliot Silverman, Michael L. Spiegel, of counsel), New York City, for intervenor.

NICKERSON, District Judge.

Since November 1983 a grand jury in this district has been investigating alleged criminal activities of the Lucchese organized crime family. The government contends that the intervenor, the client of Attorney X (the Attorney), criminally obstructed that investigation. To determine whether the obstruction was intentional the government wishes to compel the Attorney to testify before the grand jury as to what he was told about the investigation by a third person and what he then conveyed to his client. The Attorney and the intervenor claim that these communications are immune from disclosure under (1) the attorney-client privilege, (2) the joint defense privilege, (3) the work product doctrine and (4) the relevancy and need test referred to in *In re Grand Jury Subpoena Served Upon John Doe, Esq.*, 759 F.2d 968 (2d Cir.1985), *rehearing en banc* granted July 16, 1985.

For several years the government has been investigating allegations of racketeering, extortion of labor peace payoffs, and other offenses in connection with the air freight industry at John F. Kennedy International Airport. As part of that investigation the government obtained tape recordings of conversations at the home of Frank Manzo. According to the government, these conversations revealed that he and other members of the Lucchese family were engaged in various crimes. A grand jury, empaneled on November 21, 1983 to investigate these alleged crimes, handed up on February 19, 1985 a 23-count indictment charging eleven defendants, including Manzo, with RICO conspiracy, multiple Hobbs Act violations, securities fraud and mail fraud. The mail fraud charge, naming four defendants, relates to activities involving $250,000 of Sullivan County, New York bonds purchased through a New York municipal bond broker.

The grand jury obtained evidence that the Attorney's client was involved in the Sullivan County bonds transaction. It is now investigating the charge that the Attorney's client criminally obstructed the investigation of that transaction.

The government seeks to compel the Attorney to testify before the grand jury as to conversations he had with a third person and with his client about the grand jury investigation. The questions the government proposes to ask include the following:

Were you told that a federal grand jury in the Eastern District of New York was investigating the Sullivan County bonds deal involving Gabriele Hueglin? Were you told that your client's name had been mentioned during the investigation? Were you told that William Barone appeared to be the target of the investigation? If so, who told you? If so, when were you told?

Did you tell your client that a federal grand jury in the Eastern District of New York was investigating the Sullivan County bonds deal involving Gabriele Hueglin? Did you tell your client that he had been mentioned during the investigation? Did you tell your client that William Barone appeared to be the target of the investigation? If so, when did you do so?

## I

The intervenor claims that the information that the government seeks to elicit by these questions is privileged as attorney-client communications. The privilege is primarily designed to protect confidential communications from the client to the attorney. *See In re Sealed Case*, 737 F.2d 94, 98 (D.C.Cir.1984); *United States v. International Business Machines Corp.*, 66 F.R.D. 206, 211 (S.D.N.Y.1974). But a communication from an attorney to his client is privileged if it would "reveal confidential information communicated by the client to the lawyer," *International Business Machines Corp., supra*, or if it consists of legal advice given to the client. *See United States v. Amerada Hess Corp.*, 619 F.2d 980, 986 (3d Cir.1980). Where the information sought from the lawyer is not confidential, the fact that it may incriminate the client is "not a valid reason to invoke the attorney-client privilege." *In re Shargel*, 742 F.2d 61, 63 (2d Cir.1984).

▇ The information about the grand jury investigation that the Attorney obtained from a third person and relayed to his client is clearly not confidential. Where an attorney is a mere "conduit" the client may not invoke the privilege. *See United*

*States v. Hall*, 346 F.2d 875 (2d Cir.), *cert. denied*, 382 U.S. 910, 86 S.Ct. 250, 15 L.Ed.2d 161 (1965).

The intervenor argues that although the information sought may not be confidential its disclosure would permit inferences as to confidential matters such as the concerns of his client and the reasons for his seeking representation. However, the court is satisfied by the facts stated in the government's *in camera* affidavit that these concerns are no longer, if they ever were, confidential.

Finally the intervenor says that if the Attorney is forced to answer the proposed questions he will have to reveal the legal advice he gave to his client. But the intervenor has made no showing as to what legal advice would be revealed or why the Attorney would be unable to exclude the legal information from the factual information in making his responses.

## II

▇ The intervenor asserts that the information he received about the grand jury investigation was obtained by the Attorney from an attorney representing another subject of the grand jury's investigation. Therefore, intervenor argues, the statements are privileged as joint defense communications.

The joint defense privilege is:

[w]here two or more persons who are subject to possible indictment in connection with the same transactions make confidential statements to their attorneys, these statements, even though they are exchanged between attorneys, should be privileged to the extent they concern common issues and are intended to facilitate representation in possible subsequent proceedings.

*Hunydee v. United States*, 355 F.2d 183, 185 (9th Cir.1965).

But the information that the third party attorney conveyed to the Attorney and that he conveyed to his client was not confidential. This is not a case where the client of an attorney told him in confidence facts that the attorney then relayed to another

attorney whose client was also subject to grand jury investigation. The court is satisfied from the facts in the government's *in camera* affidavit that the third party attorney did not obtain the information which he gave to the Attorney from his client. The addition of another attorney to the chain of communicators does not change the non-confidential nature of the information transmitted.

## III

The intervenor asserts that the facts that the Attorney learned about the grand jury investigation were obtained as part of his preparation for litigation and are protected as attorney's work product. The Attorney says that if he is forced to answer the proposed questions he will have to disclose his own mental impressions of the statements made to him by the third party attorney. Further the intervenor argues that the government has not shown any need for the Attorney's testimony since the third party attorney can testify as to what he said to the Attorney.

In *Hickman v. Taylor*, 329 U.S. 495, 510, 67 S.Ct. 385, 393, 91 L.Ed. 451 (1947), the Supreme Court recognized that "unwarranted inquiries into the files and the mental impressions of an attorney" by the opposing attorney would provide substantial intrusion into the effective preparation of a client's case. Thus, the Court held that the work product of a lawyer reflected in "interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways" should be protected from disclosure unless the opposing attorney can show need. *Id.* at 511, 67 S.Ct. at 393. The Court also said that oral statements made by witnesses to an attorney in the course of his preparations for trial are absolutely privileged from disclosure. *Id.* at 512, 67 S.Ct. at 394. However, in the *Hickman* case the attorney seeking the oral statements could show no need. He had sufficient access to all the witnesses and to the facts in his opponent's possession.

In *Upjohn Co. v. United States*, 449 U.S. 383, 401–02, 101 S.Ct. 677, 688–89, 66 L.Ed.2d 584 (1981) the Supreme Court reconsidered the rule that no showing of necessity could "overcome protection of work product which is based on oral statements from witnesses." The Court declined to say that such statements are absolutely protected and suggested that a very strong showing of "necessity and unavailability by other means" might permit compelled disclosure of such information. *Id.* at 402, 101 S.Ct. at 689. Thereafter, the Second Circuit held that the government had shown the requisite need where it sought notes of interviews with officers of a corporation accused of bribing government officials, and demonstrated that the information was essential to prove what these corporate officers knew and when they knew it. *In re John Doe Corp.*, 675 F.2d 482, 492 (2d Cir.1982). The court also stated that discovery of the attorney's notes would not "tread upon any substantial interest protected by the work-product immunity" because they merely paraphrased statements of the witnesses and did not reveal the mental processes or legal theories of the attorney. *Id.* at 493.

The questions that the government wishes to ask the Attorney seek to elicit his and his client's knowledge of certain unprivileged facts but not the Attorney's thought processes or mental impressions. Moreover, although the Attorney received the statements at issue in the course of his preparation for litigation, they are not of the sort of statements discussed in the *Hickman* and *Upjohn* cases. The third party's attorney was not a prospective witness interviewed in anticipation of trial.

Compelling disclosure of a witness's statements in response to interview questions might reveal an attorney's litigation theories and strategies. Here the information obtained by the Attorney is not evidence intended for use in defense of his client. The Attorney simply confirmed the existence of a grand jury investigation and the client's potential need for representation. The interests that the work product

doctrine is intended to protect are not at stake.

 Even if these statements were protected as work product, the government has shown the requisite need for their disclosure. As in the *In re John Doe Corp.* case, the government needs to discover the information in order to ascertain what the Attorney's client knew and when he knew it. Intent is an essential element of the crime. The testimony of the third party attorney as to what he told the Attorney would not establish what the Attorney's client knew.

### IV

Finally the intervenor contends that the government has not made a showing of need such as the majority panel opinion in *In re Grand Jury Subpoena Served Upon John Doe, Esq.*, 759 F.2d 968 (2d Cir.1985), *rehearing en banc* granted July 16, 1985, required to justify calling an attorney as a witness before a grand jury when his client is under investigation by that grand jury. Since the court granted rehearing *en banc* in that case the panel opinion is not binding on this court. *See United States v. Morchower*, 718 F.2d 1093 (4th Cir.1983) (unpublished opinion). But even if it were, this court deems it inapplicable.

In the *Doe, Esq.* case the majority held that the government has the burden of showing "not only that the information sought is necessary to the grand jury investigation, but that there is no other reasonably available source for that information than the attorney." *Id.* at 976–77. The decision was based on the sixth amendment right of an accused to the assistance of counsel of his own choice in the "preparatory stages long before trial." *Id.* at 972. A crucial element in that case was the fact, conceded by both parties, that if the attorney, who had represented the client for almost two decades, was called to testify he would be forced to disqualify himself from representation. The opinion assumed that this would have caused significant hardship to the client.

This case is quite different. There is neither a concession by the government nor any degree of certainty that if the Attorney does testify he will be forced to disqualify himself. Indeed, the Attorney has not stated that the intervenor if indicted will choose the Attorney to represent him at trial. The intervenor has retained more than one highly experienced and capable counsel in this matter and it is mere speculation whether he will choose the Attorney to represent him at a trial.

Even if the Attorney were disqualified, the impact on his client's right to counsel of his own choice would be minimal. Intervenor does not claim that the Attorney has represented him for decades, or that the Attorney has special knowledge or experience that make his services critical. Plainly the intervenor has access to attorneys of the highest caliber.

The government's application to compel the grand jury testimony of the Attorney in accordance with the proposed questions is granted. So ordered.