123 F.3d 695
 In re: GRAND JURY SUBPOENAS
 Nos. 97-1002, 97-1003.
 United States Court of Appeals,
First Circuit.
 Heard May 9, 1997.
Decided Aug. 13, 1997.
 
 Michael W. Reilly, with whom Tommasino & Tommasino and Michael G. West were on joint brief for appellants the Client and the Owner.
 John P. Pucci, with whom Jeanne M. Kaiser and Fierst & Pucci were on brief for appellant Law Firm.
 Andrea N. Ward, Assistant United States Attorney, with whom Donald K. Stern, United States Attorney, was on brief for appellee United States.
 Before TORRUELLA, Chief Judge, BOWNES, Senior Circuit Judge, and LYNCH, Circuit Judge.
 TORRUELLA, Chief Judge.
 
 
 1
 The case before us is a small piece in a much larger puzzle. A federal grand jury, sitting in Massachusetts, has been investigating possible criminal activity on the part of a firm ("firm" or "client") and its owner ("owner").[1] The firm was in the business of assisting inventors in promoting their discoveries and in obtaining patents. The government suspected fraud and began an investigation. During the investigation, a search warrant was executed at the business offices of the client. As a result of some of the materials seized during this search, the government requested and received a grand jury subpoena directed at the custodian of records at the office of the firm's legal representative ("law firm"). The subpoena sought all records "pertaining to charges or billing for legal services" performed by the law firm for the client. The information sought included:
 
 
 2
 1) all documents relating to the establishment of such entities as clients;
 
 
 3
 2) all diary entries and other summaries indicating the hours worked, the hours charged, the nature or subject of the services performed, and the identity of the client; and
 
 
 4
 3) all invoices or bills of any kind.
 
 
 5
 Subpoena to Testify Before Grand Jury, dated August 5, 1996.
 
 
 6
 The client and the firm filed separate motions to quash the subpoena, arguing principally that the billing records contained detailed descriptions of the legal work performed and that disclosure thereof would violate the attorney-client privilege.
 
 
 7
 On December 18, 1996, the district court denied the motions to quash, holding that "records of the sort exemplified by Ex. 2 to the Offord Affidavit (attached to the Government's Response to the Motion to Quash) are not sufficiently specific to be protected by the attorney-client privilege." See Motion to Quash Subpoena, Record Appendix, at 24 (margin order). Both the client and the law firm have appealed the denial of the motion to quash.
 
 I. Appellate Jurisdiction
 
 8
 As an initial matter, we must determine whether this court has jurisdiction to hear the appeal.
 
 
 9
 It is established that, under normal circumstances, a party seeking to quash a subpoena cannot appeal a court order to comply without first resisting that order and subjecting itself to a citation for contempt. United States v. Ryan, 402 U.S. 530, 533, 91 S.Ct. 1580, 1582, 29 L.Ed.2d 85 (1971); Cobbledick v. United States, 309 U.S. 323, 328, 60 S.Ct. 540, 542-43, 84 L.Ed. 783 (1940); Corporacin Insular de Seguros v. Garca, 876 F.2d 254, 257 (1st Cir.1989).
 
 
 10
 This rule disposes of the law firm's appeal. The law firm has not been cited for contempt and, therefore, we lack jurisdiction to hear the appeal. The client's appeal, however, implicates a more complex jurisdictional analysis.
 
 
 11
 An exception to the rule requiring a contempt citation prior to appeal exists when subpoenaed documents are in the hands of a third party. In that case, the owner of the documents may seek immediate appeal of a district court's order requiring production of those documents. This exception, known as the "Perlman doctrine," exists because it is unlikely that a third party will risk contempt simply to create an appealable order for the benefit of the owner of the documents. See Perlman v. United States, 247 U.S. 7, 12-13, 38 S.Ct. 417, 419, 62 L.Ed. 950 (1918). In other words, the district court order is effectively final with respect to a party that is powerless to prevent compliance with the order.
 
 
 12
 When the third party is the document owner's lawyer, however, a different rule applies. In this circuit, the "question [of] whether a client may appeal to the court of appeals from a district court's order directing his attorney to testify before the grand jury with respect to a communication allegedly covered by the attorney-client privilege," was decided in In re Oberkoetter, 612 F.2d 15, 16 (1st Cir.1980). In that case, an attorney had been ordered by the district court to testify before a grand jury. He initially declined to do so on the grounds of attorney-client privilege. Id. The district court ordered him to testify despite the claim of privilege. The attorney's client then filed an appeal from the district court order. This court held that it lacked appellate jurisdiction until such time as the attorney received a contempt citation.
 
 
 13
 The facts of the instant case fall squarely with the scope of Oberkoetter. We believe, however, that it is time to reconsider our holding in that case.[2]
 
 
 14
 We begin by noting the tension between Perlman and Oberkoetter. In Perlman, exhibits belonging to Perlman were in the hands of the clerk of the district court in connection with patent litigation. The district court subsequently ordered the clerk to produce the exhibits for presentation to a grand jury investigating charges that Perlman had perjured himself in the patent suit. Perlman claimed privilege with respect to the exhibits. The district court denied his petition to restrain their presentation to the grand jury. Perlman appealed. The Supreme Court ruled that his appeal should be allowed on the grounds that "Perlman was powerless to avert the mischief of the order." Perlman, 247 U.S. at 13, 38 S.Ct. at 419. We believe that the reasoning of Perlman is directly applicable to this case and requires us to accept jurisdiction over the instant appeal. Even though it is an attorney that is subpoenaed for his or her client's records, the client here has been denied the opportunity to avert the mischief of the order by allowing himself to be held in contempt. The client is at the mercy of his or her attorney and can only gain a review of the district court's order if the attorney is prepared to risk a contempt citation. The real possibility of a serious conflict of interest cannot be overlooked or denied.
 
 
 15
 We also take note of the fact that the Supreme Court has not overruled Perlman. In Oberkoetter, Judge Wyzanski stated that "he expects the Supreme Court to ultimately overrule Perlman." Oberkoetter, 612 F.2d at 18. With the benefit of hindsight we know that Perlman has not been overruled and continues to bind this court. To whatever extent the Oberkoetter court believed that Perlman 's applicability had faded, and to whatever extent this may have influenced its ruling, the reasoning in Oberkoetter was incorrect.
 
 
 16
 Most of our sister circuits have interpreted Perlman to apply in instances when an attorney is ordered by a court to produce client records in the face of a claim of privilege. See Conkling v. Turner, 883 F.2d 431, 433-34 (5th Cir.1989) (order directing the testimony of appellant's attorney is immediately appealable); In re Grand Jury Subpoena, 784 F.2d 857, 859-60 (8th Cir.1986) (same); In re Klein, 776 F.2d 628, 630-32 (7th Cir.1982) ("Like several other courts, this one has treated Perlman as a holding that clients always are entitled to appeal as soon as their attorneys are required to produce documents."); United States v. (Under Seal), 748 F.2d 871, 873 n. 2 (4th Cir.1984) ("[W]hen the one who files the motion to quash, or intervenes, is not the person to whom the subpoena is directed, and the movant or intervenor claims that production of the subpoena documents would violate his attorney-client privilege, the movant or intervenor may immediately appeal."); In re Grand Jury Proceedings, 722 F.2d 303, 305-07 (6th Cir.1983) (allowing immediate appeal of an order compelling the testimony of movant's attorney); In re Grand Jury Proceedings, Appeal of Twist, 689 F.2d 1351, 1352 n. 1 (11th Cir.1982) (same); In re Grand Jury Subpoena Served Upon Doe, 759 F.2d 968, 971 n. 1 (2d Cir.1985) (same); In re Grand Jury Proceedings, 604 F.2d 798, 800 (3d Cir.1979) (same).
 
 
 17
 Only three other circuits have determined that an order directing an attorney to testify regarding material that is alleged to be privileged is not automatically appealable. The Ninth Circuit allows an appeal if the attorney no longer represents the owner of the documents, but does not allow immediate appeal where the attorney is currently representing the owner. See, e.g., In re Grand Jury Subpoenas Dated December 10, 1987, 926 F.2d 847, 853 (9th Cir.1991). The District of Columbia Circuit has ruled that such an order is appealable when "circumstances make it unlikely that an attorney would risk a contempt citation in order to allow immediate review of a claim of privilege." In re Sealed Case, 754 F.2d 395, 399 (D.C.Cir.1985). The Tenth Circuit does not allow the appeal of district court orders compelling the testimony of an attorney who claims privilege unless the attorney has accepted a contempt citation or the owner of the records can "prove that the attorney will produce the records rather than risk contempt." In re Grand Jury Proceedings, Subpoena to Vargas, 723 F.2d 1461, 1464-66 (10th Cir.1983).
 
 
 18
 No circuit outside of our own has adopted a rule as extreme as the Oberkoetter rule, which bars an appeal until the lawyer is cited for contempt.
 
 
 19
 In addition to the persuasive case law from other circuits, we are troubled by the tenuous logic of Oberkoetter. In particular, that opinion assumed that "[a]n attorney, in his client's interest and as proof of his own stout-heartedness, might be willing to defy a testimonial order and run the risk of a contempt proceeding." In re Oberkoetter, 612 F.2d at 18. Although we do not doubt that some lawyers would accept a contempt citation in order to provide their clients with the opportunity to appeal, we are persuaded by the following reasoning of the Fifth Circuit:
 
 
 20
 Although we cannot say that attorneys are in general more or less likely to submit to a contempt citation rather than violate a client's confidence, we can say without reservation that some significant number of client-intervenors might find themselves denied all meaningful appeal by attorneys unwilling to make such a sacrifice. That serious consequence is enough to justify a holding that a client-intervenor may appeal an order compelling testimony from the client's attorney.
 
 
 21
 In re Grand Jury Proceedings in Matter of Fine, 641 F.2d 199, 203 (5th Cir.1981). Mindful that it would be unduly optimistic to anticipate that all attorneys will accept contempt rather than compromise their clients' appeal, we think it unwise to require such an action before permitting an appeal.
 
 
 22
 Oberkoetter relies heavily on the premise that the appellate review will interfere with the normal course of litigation. The greatest of these concerns, in the eyes of the Oberkoetter court, appears to have been the delay caused by an appeal. While there is something to this argument, it ultimately fails to justify a total bar on appeals in cases such as this. A party who accepts contempt is permitted to appeal the contempt citation and, thereby, seek review of the order compelling testimony. Granting the same opportunity to appeal to a party who does not have the option of accepting contempt is unlikely to lead to greater delay than exists in cases that have featured a contempt citation.
 
 
 23
 Finally, we add that allowing an appeal only if the attorney accepts a contempt citation pits lawyers against their clients in a manner that we do not believe is in the interests of justice. See generally United States v. Edgar, 82 F.3d 499, 507-08 (1st Cir.1996). A lawyer should not be required to choose between the interests of his or her client and his or her own interests. A rule that promotes conflicts of interest hinders the fair representation of the client and makes it less likely that clients will be well served by their attorneys.
 
 
 24
 In light of the above discussion, therefore, we overrule In re Oberkoetter, 612 F.2d 15 (1st Cir.1980). In its place, we adopt the majority rule and apply the Perlman exception to those cases wherein a client seeks immediate appeal of an order compelling production of a client's records from his attorney.
 
 
 25
 Appellee advances one additional argument in support of its claim that we lack jurisdiction over this appeal. It claims that there is no jurisdiction unless the facts of the case, in addition to being an appeal from the denial of a motion to quash a subpoena directed at the law firm, meet the requirements of the collateral order doctrine. See United States v. Billmyer, 57 F.3d 31, 34 (1st Cir.1995). We are unpersuaded by the government's argument. It cites to no authority, nor do we find any, that states that the denial of a motion to quash is reviewable only if, in addition to meeting the requirements of the Perlman doctrine, it also meets the requirements of the collateral order doctrine. We decline to adopt such a rule in this context.
 
 II. Attorney-Client Privilege
 
 26
 Having overturned Oberkoetter, we have jurisdiction to entertain this appeal. Upon review of the record and the briefs on appeal, we are of the opinion that there is simply not enough information for us to form a reasoned judgment as to whether the records at issue are privileged.
 
 
 27
 Appellant alleges that the records at issue contain, in part, substantive descriptions of legal work rendered. We certainly agree that the documents are not per se non-privileged merely because they were intended primarily for billing purposes. What matters is not the form of the information, but its content. See, e.g., United States v. Olano, 62 F.3d 1180, 1205 (9th Cir.1995); In re Grand Jury Proceedings, 896 F.2d 1267, 1273 (11th Cir.1990); Matter of Witnesses Before Special March 1980 Grand Jury, 729 F.2d 489, 495 (7th Cir.1984). Whatever the form of the information, it is privileged if: (1) the client was, or sought to be, a client of the law firm; (2) the lawyer acted as a lawyer in connection with the information at issue; (3) the information relates to facts communicated for the purpose of securing a legal opinion, legal services, or assistance in a legal proceeding; and (4) the privilege has not been waived. See United States v. Wilson, 798 F.2d 509, 512 (1st Cir.1986).
 
 
 28
 On the other hand, based on the one unredacted invoice that was submitted to the district court by appellee, we do not believe it is possible to determine whether the documents, as a group, are privileged. The submitted invoice includes several entries that are clearly not privileged, and one entry that names the former accountant and chief financial officer of the client and that reads "IRS Power of Atty. forms and corp. penalty abatements; Correspondence to client." From this information, appellants urge this court to conclude that the records at issue are privileged, pointing out that the parties would expect to be able to discuss IRS corporate penalty abatements and power of attorney forms without the IRS learning about it. Appellee, on the other hand, claims that this entry, described as "typical" of the group of records, demonstrates that there is no privilege. We cannot agree with either argument.
 
 
 29
 It is at least arguable that the entry meets the criteria of a privileged communication. Furthermore, when taken as a group, it is possible that the bills would reveal considerable privileged information. This possibility is compounded by the fact that the government has already seized the client's business records, making it more likely that the government can deduce the privileged substance of the notations of the records. See In re Grand Jury Proceedings, 517 F.2d 666, 674 (5th Cir.1975) ("[I]nformation, not normally privileged, should also be protected when so much of the substance of the communications is already in the government's possession that additional disclosures would yield substantially probative links in an existing chain of inculpatory events or transactions.").
 
 
 30
 We cannot, however, base our decision on this mere possibility. We believe that further inquiry into the question of privilege is necessary.
 
 
 31
 Given that an in camera review of the documents was never conducted, we are uncertain as to how the district court arrived at its conclusion that the documents are not privileged. Appellants, at bottom, ask us to accept their statements that the records contain privileged information, while appellees urge us to assume that they do not. We are unwilling to base our decision on such assertions. See United States v. Wujkowski, 929 F.2d 981, 984 (4th Cir.1991).
 
 
 32
 Accordingly, we vacate the district court's ruling on the privilege issue and remand with instructions that the district court conduct a more complete inquiry into the question. See Icicle Seafoods, Inc. v. Worthington, 475 U.S. 709, 714, 106 S.Ct. 1527, 1530, 89 L.Ed.2d 739 (1986) ("If the Court of Appeals believed that the District Court had failed to make findings of fact essential to a proper resolution of the legal question, it should have remanded to the District Court to make those findings."). We also note that, in light of Oberkoetter, the parties and the district court may have been operating under the assumption that no appeal from the district court's ruling would be possible. Based on this reasonable, though ultimately incorrect, assumption, those involved may have failed to produce a record sufficient for appellate purposes. Our remand allows for the production of such a record. Cf. Millipore Corp. v. Travelers Indemnity Co., 115 F.3d 21, 34 (1st Cir.1997).
 
 
 33
 Appellants also argue that the subpoena is the fruit of an impermissible violation of the attorney-client relationship. This issue was raised by both parties below but was not decided by the district court. Accordingly, we need not reach the issue. We leave the issue to be decided, in the first instance, by the district court on remand.
 
 III. Conclusion
 
 34
 For the foregoing reasons, we dismiss the law firm's appeal, vacate the district court ruling as to the client's appeal, and remand for further proceedings.
 
 
 
 [1]
 On February 5, 1997, a "Consent Motion to Seal and Redact" was granted by the district court. In accordance with Federal Rule of Criminal Procedure 6(e)(6), no references to the parties have been made in this opinion. See, e.g., United States v. (Under Seal), 748 F.2d 871 (4th Cir.1984)
 
 
 [2]
 Ordinarily, prior panel decisions are binding on future panels and it is for an en banc court to reexamine the status of a prior opinion. In rare instances, however, where it has become relatively clear that a prior precedent of this court was erroneously decided or is no longer good law, we have achieved the same result more informally by circulating a proposed panel opinion that reverses a prior panel to all the active judges of the court for pre-publication comment. See, e.g., Gallagher v. Wilton Enters., Inc., 962 F.2d 120, 124 n. 4 (1st Cir.1992); Trailer Marine Transp. Co. v. Rivera Vazquez, 977 F.2d 1, 9 n. 4 (1st Cir.1992); United States v. Bucuvalas, 909 F.2d 593, 598 n. 9 (1st Cir.1990); see also Ionics, Inc. v. Elmwood Sensors, Inc., 110 F.3d 184, 187 n. 3 (1st Cir.1997) (overturning a circuit precedent in order to comply with controlling authority). While this practice is to be used sparingly and with extreme caution, we have employed it in the special circumstances of this case, with the result that a majority of the active judges of this court has approved the overruling of Oberkoetter on the point at issue. Of course, by resorting to this mechanism, we neither foreclose any party from filing a formal petition for rehearing en banc nor commit any member of the court to a position in respect to any such petition