**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 18, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

In re: GRAND JURY PROCEEDINGS

Nos.09-2062/09-2068  and
09-2209/09-2228

---

**ORDER**

---

The Court previously issued under seal two opinions regarding the
discovery and use of material before a Grand Jury in re:  09-2062/09-2068 and
09-2209/09-2228.  The Grand Jury at issue in those cases has now been
discharged without returning any indictment against the subject of the
investigation.

The Court believes that publication of these two opinions, in redacted form,
is necessary to advance the law on certain issues discussed in those opinions.
However, the Court is also mindful of the need to protect the privacy of the
subject of the investigation and the secrecy of Grand Jury proceedings.  Such
protections are particularly acute in this case where no indictment was returned
by the Grand Jury.

The subject of the Grand Jury has filed an objection to the publication of
these two opinions.  Alternatively, the subject of the investigation has suggested
redactions in the opinions, and reported that those suggested redactions were

agreeable to the United States Attorney.

Having considered the parties' positions and the competing and sometimes conflicting interests implicated, it is the judgment of the Court that:

(1)     The subject's request that these opinions not be published is DENIED.

(2)     The request for appropriate redactions is GRANTED as reflected in the opinions hereby being published.

(3)     As redacted, the two opinions in re: Grand Jury Proceedings Nos. 09-2062/09-2068 (on the first appeal) and 09-2209/09-2228 (on the second appeal) are attached to this order.  We ORDER that the opinions be published, and direct the Clerk to take appropriate steps  in that regard.

Entered for the Court,

ELISABETH A. SHUMAKER
Clerk of Court

2

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 18, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>**PUBLISH**</u> **{REDACTED VERSION}**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

| | |
|---|---|
| In re: GRAND JURY PROCEEDINGS | Nos. 09-2062, 09-2068 |

---

**{REDACTED}**

---

{REDACTED}

---

Before **GORSUCH, EBEL,** and **HOLMES**, Circuit Judges.

---

**EBEL**, Circuit Judge.

---

This appeal arises from subpoenas issued to two of Appellant's lawyers, Attorney #1 and Attorney #2, by a federal grand jury investigating alleged wrongdoing by Appellant.[1] Appellant intervened in this investigation seeking to quash the subpoenas on the grounds that they violated his Sixth Amendment right

---

[1]{REDACTED} {This opinion has been redacted in appropriate places to preserve grand jury secrecy and the privacy of the subject. Subsequent to the initial issuance under seal of the opinion and prior to this publication of the opinion, the grand jury was discharged without returning an indictment against the subject.}

to counsel and {his state's} Rules of Professional Conduct, and compelled testimony and the disclosure of documents protected by the attorney-client privilege and attorney work-product doctrine. Appellant also moved for dismissal of the grand jury or other pre-indictment relief to remedy the government's alleged misconduct before the grand jury. Unsatisfied with the district court's decisions denying relief, Appellant has appealed to this court.[2]

Before addressing the arguments raised, we first consider whether Appellant's claims are properly before this court. We dismiss Appellant's claims of prosecutorial misconduct before the grand jury and Appellant's requests for pre-indictment remedies because we lack appellate jurisdiction. Also, we dismiss as premature Appellant's challenge to the district court's order directing Attorney #1 to produce billing records for *in camera* review. Finally, exercising appellate jurisdiction under the Perlman[3] rule over Appellant's sole remaining challenge, to the district court's denial of his motion to quash the testimonial subpoenas issued to Attorneys #1 & #2, we affirm the district court's decision to order them to answer nine questions that were originally objected to as calling for privileged responses.

---

[2]In a previous order, this court granted one of Appellant's lawyers—Attorney #1—permission to intervene in this appeal in order to assert his personal interest in protecting his claimed attorney work product.

[3]Perlman v. United States, 247 U.S. 7 (1918).

# I. BACKGROUND

Appellant is the target of an ongoing federal grand jury proceeding conducting an investigation into his allegedly making false statements {on federal forms}. {REDACTED}

The grand jury issued subpoenas seeking the testimony of Attorney #1 and Attorney #2 {REDACTED}. Appellant moved to quash both subpoenas based on the attorney-client privilege and because Attorneys #1 and #2's testimony would violate Appellant's Fifth and Sixth Amendment rights.[4] In the alternative, Appellant requested that his attorneys' testimony be presented "by affidavit or, if presented live before the grand jury, then on pre-approved questions, with an instruction from the court to prevent any prejudice to the [Appellant from any invocation of privilege by his attorneys]."[5] (Jt. App'x ("JA") 141.)

{REDACTED} {T}he district court held a hearing on Appellant's motions to quash, and thereafter denied both motions. In so doing, the district court judge explained that he would, instead, be available to serve as a "referee" "to resolve

---

[4]Appellant also requested that the court provide a mechanism for presenting to the grand jury a self-described "exculpatory" affidavit from Attorney #1.

[5]Appellant attached to his motion to quash the subpoena directed to Attorney #1 an affidavit from his {employee}, John Doe, describing that Doe consulted with one of Appellant's attorneys in completing parts of two forms—{Form 1 and Form 2}—that Appellant submitted in support of his application for {REDACTED} position. Appellant's motion to quash the subpoena directed to Attorney #2 made clear that Attorney #2 was Appellant's attorney with whom Doe consulted before completing {Form 1}.

any disputes that [would] arise with regard to the privilege and how it's being invoked in the grand jury." (JA 578.) {REDACTED} {B}efore Attorney #1's and Attorney #2's rescheduled appearances before the grand jury, Appellant renewed his motions to quash, which the district court again denied. The district court eventually held three more hearings to address issues of privilege during breaks in the questioning of Attorney #1 and Attorney #2. During the hearings, Appellant indicated his intent to appeal the court's rulings on privilege, and for the sake of expediency, the district court instructed "the government to . . . ask whatever questions you have" in order to have a full record on appeal. (JA 666.)

Although Appellant's attorneys initially declined to answer any questions before the grand jury, they eventually answered many of the government's questions.[6] As to the questions which they declined to answer, each witness asserted the Sixth Amendment, attorney-client privilege, and the work-product doctrine. After Attorney #1 and Attorney #2 finished testifying, the district court directed the government to review the transcripts of their testimony and inform the court of the specific questions to which these witnesses "improperly asserted" privileges. (JA 688.) Both Appellant and the government subsequently briefed the question of the validity of the privileges asserted by the attorneys. Attorney #1 also joined in Appellant's motion, asserting that the outstanding questions posed to him implicated the work-product doctrine.

---

[6]{REDACTED}

While the issues of privilege were pending before the district court, Appellant filed a separate motion requesting that the district court find that the government committed prosecutorial misconduct in its questioning of the attorneys. Appellant also asked the court to craft a remedy, including, potentially, the prevention of "any further investigation into this matter based on the prosecutorial misconduct which has already occurred."[7] (JA 204.)

Also, while the district court's decision on the propriety of Attorney #1 and Attorney #2's invocation of privilege before the grand jury was pending, the grand jury issued an additional subpoena to Attorney #1, requesting Attorney #1 produce "all billing records generated during [Attorney #1's] representation of [Appellant] that document each contact {Attorney #1}would have had with {Appellant} {during a specified time period}." (JA 223.) Appellant moved to quash this subpoena.

{REDACTED} {T}he district court issued {Order 1,} a written opinion and order, concluding that all questions that the government requested rulings on—save one—were acceptable and did not implicate Appellant's privileges or rights. The district court, therefore, ordered Attorney #1 and Attorney #2 to answer several outstanding questions. As to the one question to which the district

---

[7]Specifically, Appellant requested the court to "[c]raft a remedy which either restores the fairness and impartiality of this grand jury; requires a different grand jury; requires a different prosecutor or prevents any further investigation into this matter based on the prosecutorial misconduct which has already occurred." (JA 204.)

court sustained Appellant's invocation of privilege (specifically, the work-product doctrine), the court noted that a variation of that question might avoid implicating the work-product doctrine. Four days later, in a short order{,} {Order 2}, the district court denied Appellant's motion concerning prosecutorial misconduct as moot given {Order 1} regarding privilege.

In light of {Order 1}, the government issued new subpoenas to Attorney #1 and Attorney #2 to testify before the grand jury {REDACTED}. On the same day the new subpoenas were issued, {REDACTED}, the government also sent a letter to the district court requesting a ruling on a variation of the one question that the court had deemed protected by the work-product doctrine. The government's letter also requested that the court direct Attorney #1 to answer two other questions that the district court had not ruled on in {Order 1}.

{REDACTED} {T}he district court quashed the subpoena duces tecum issued to Attorney #1, but ordered all of his subpoenaed billing records to be submitted to the court for *in camera* review so the court could determine whether they are protected {("Order 3")}. {REDACTED}, {T}he district court held a telephonic hearing regarding the issues raised by the government's {REDACTED} letter and Appellant's intent to appeal the district court's rulings. During the hearing, the court {issued an oral order, Order 4, which} ordered Attorney #1 to answer several additional questions, including a variation of the previously unacceptable question. At the hearing, Attorney #1 and Attorney #2

- 6 -

both represented to the court that, instead of risking contempt, they would comply with the district court's orders directing them to answer the government's questions. The next day, the court issued an order granting Appellant's request for a sixty-day stay of the new subpoenas in order to appeal.[8]

Appellant now appeals from three written district court orders, {Order 1, Order 2, and Order 3}, as well as the district court's oral order issued during the telephonic hearing{,} {Order 4}.[9]

## II. JURISDICTIONAL ISSUES

Before addressing the merits of Appellant's claims, we must first confirm our jurisdiction.

This court generally has jurisdiction to review only "appeals from all final decisions of the district courts." 28 U.S.C. § 1291. None of the four appealed orders, however, constitutes a final decision under § 1291, because none of them "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Van Cauwenberghe v. Biard, 486 U.S. 517, 521 (1988) (internal quotation marks omitted). Nevertheless, the Supreme Court has recognized that "in the limited class of cases where denial of immediate review

---

[8]The order indicated that Appellant could move, if necessary, for an extension of the stay. The record does not indicate whether the district court has extended its stay order.

[9]Appellant filed two notices of appeal—{REDACTED}—which were consolidated for procedural purposes.

would render impossible any review whatsoever of an individual's claims," an order may still be immediately appealable.  United States v. Ryan, 402 U.S. 530, 533 (1971).

(1) {Order 1 and Order 4}

Appellant appeals from four orders, which fall into three general matters. The first matter, which includes {Order 1} and {Order 4} concerns the district court's decision to deny Appellant's motions to quash the subpoenas of Attorney #1 and Attorney #2 to testify and instead to direct that they answer certain questions.

"The denial of a motion to quash a grand jury subpoena generally is interlocutory and not immediately appealable."  In re Grand Jury Proceedings, 156 F.3d 1038, 1040 (10th Cir. 1998).  "The law is well settled that 'one to whom a subpoena is directed may not appeal the denial of a motion to quash that subpoena but must either obey its commands or refuse to do so and contest the validity of the subpoena if he is subsequently cited for contempt on account of his failure to obey.'"  In re Grand Jury Subpoenas (Stover), 40 F.3d 1096, 1099 (10th Cir. 1994) ("Stover") (quoting Ryan, 402 U.S. at 532).

Nevertheless, the Supreme Court has provided an exception to this general rule.  In Perlman v. United States, 247 U.S. 7 (1918), the Court held that a district court order denying Perlman's motion to quash a subpoena directing a court clerk to produce documents that Perlman claimed were privileged—he argued that

production to the grand jury as a basis for an indictment against him would violate the Fourth and Fifth Amendments—was immediately appealable, because the third party to whom the subpoena was directed would not have risked a contempt citation in order to preserve Perlman's privilege. Id. at 13. Interlocutory judicial review was necessary because otherwise Perlman would have been "powerless to avert the mischief of the order." Id. In other words, as to Perlman—the party who was asserting privilege—the district court's order was effectively final, because he was without power to prevent the third party from complying with the subpoena.

We have consistently held that we have appellate jurisdiction under the Perlman rule when an interlocutory appeal is sought by an intervenor who claims a justiciable interest in preventing a third party's disclosure of documents or testimony, and the party subject to the subpoena indicates that he or she will produce the records or testify rather than risk contempt. See In re Grand Jury Subpoenas (Jane Roe & John Doe), 144 F.3d 653 (10th Cir. 1998) (applying Perlman rule in case where appellant's attorneys indicated that they would comply with court order to testify concerning matters that corporate client claimed were covered by the attorney-client privilege and work-product doctrines); Stover, 40 F.3d at 1099; In re Grand Jury Proceedings (Company X v. United States), 857 F.2d 710, 711 (10th Cir. 1988).

In this case, because both Appellant's attorneys indicated that they would testify rather than risk contempt,[10] Appellant's appeal of the motions to quash is properly before us. This is true even though the subpoenas were directed at his current attorneys as opposed to a former attorney or a disinterested third party. See Stover, 40 F.3d at 1099. We note that in In re Grand Jury Proceedings (Vargas), 723 F.2d 1461 (10th Cir. 1983), we implied that the relationship between the party possessing the privilege and the party subject to the subpoena was relevant in determining whether the Perlman rule should apply or whether the party holding the privilege might have to wait for the party subject to the subpoena to be held in contempt before appealing. Id. at 1465-66. While the relationship between the parties might be relevant in making the factual determination of whether the party subject to the subpoena will comply with the court order instead of risking contempt, we emphasized there that the dispositive inquiry for jurisdictional purposes is simply whether the party subject to the subpoena is going to comply with the court order.[11] Id. at 1466.

_____

[10]Attorney #1 and Attorney #2 both testified {REDACTED} that they would answer the questions before the grand jury as directed by the district court judge rather than risk contempt.

[11]A court may, but is not required to, draw an inference that a current attorney is more likely to risk contempt in order to protect a client's privilege than a former attorney or a third party. But a bright-line distinction between a current and former attorney-client relationship is unwarranted. Therefore, the nature of the relationship between the party claiming the privilege and the party subject to the subpoena should not be a dispositive fact in determining appellate

(continued...)

- 10 -

If the interested party is able to prove that the subpoenaed party will comply with an order enforcing the subpoena, then interlocutory appellate jurisdiction will arise regardless of whether the subpoenaed witness is a current attorney, is a former attorney, or has some other relationship with the interested party; otherwise, the interested party must wait for the subpoenaed party to be held in contempt. In <u>Vargas</u>, the court concluded a client's interlocutory appeal of an order directing his current attorney to appear before a grand jury and produce certain files and records was "premature," because the client did not prove that his attorney was going to produce the documents instead of risking contempt.[12] <u>Vargas</u>, 723 F.2d at 1466. Here, however, jurisdiction is easily established, because Appellant's attorneys both testified that they would comply with the district court's order.

(2) {Order 3}

---

[11](...continued)
jurisdiction.

Moreover, most other circuits do not distinguish between current and former attorney-client relationships for purposes of application of the <u>Perlman</u> rule. <u>See</u> <u>In re Grand Jury Subpoenas</u>, 123 F.3d 695, 698 (1st Cir. 1997) (collecting cases and overruling <u>In re Oberkoetter</u>, 612 F.2d 15 (1st Cir. 1980), which barred an appeal until the current lawyer was cited for contempt). Insomuch as the Ninth Circuit continues to draw a bright-line distinction between current and former attorney-client relationships, <u>see</u> <u>United States v. Amlani</u>, 169 F.3d 1189, 1992 (9th Cir. 1999), we disagree.

[12]In contrast to the case at bar, in <u>Vargas</u> there was no statement from the client's attorney that the attorney was going to comply with the court's order rather than being held in contempt.

The second matter on appeal is Appellant's challenge to {Order 3} granting Appellant's motion to quash the subpoena for Attorney #1's billing records, but directing that Attorney #1 produce his billing records for the court's *in camera* review. Although the district court stated that it "granted" the motion to quash the subpoena, because it also required the documents to be submitted *in camera* with the potential to be forwarded to the grand jury, we construe the district court's actions as leaving open the issue of whether the district court would ultimately order Attorney #1 to comply with the subpoena.

"The appealability of orders cannot be decided by rote." Horizons Titanium Corp. v. Norton Co., 290 F.2d 421, 423 (1st Cir. 1961). The mere fact that we have jurisdiction to entertain Appellant's challenge to the district court's order requiring Attorney #1 to testify before the grand jury does not imply that we also have jurisdiction over the district court's order requiring Attorney #1 to produce his billing records *in camera* to the court. In contrast to the orders denying Appellant's motion to quash the testimonial subpoenas, the district court did not finally rule on the motion to quash the subpoena duces tecum. Instead, the district court ordered the production of those documents *in camera* so that the court could review the billing records before ruling on the motion to quash. Therefore, this matter is not yet ripe for review.[13]

_____

[13]For example, we do not yet know whether the district court will order the documents to be turned over the grand jury, nor do we know what redactions, if

(continued...)

Moreover, Attorney #1's compliance with the district court's order to produce the documents *in camera* would not waive Appellant's privilege. If the court eventually ordered either Attorney #1 or a third party (such as a court clerk) to produce the documents to the grand jury, Appellant could intervene and appeal that order under the Perlman rule.[14] Therefore, we lack jurisdiction to review Appellant's challenge to the district court's order that Attorney #1 produce his billing records to the court *in camera*.

(3) {Order 2}

Next, we turn to Appellant's appeal of the district court's {Order 2} denying Appellant's motion requesting the district court to find prosecutorial misconduct and to craft a pre-indictment remedy to restore the fairness of the grand jury. This appeal falls unquestionably outside any exception to the final judgment rule. We do not have jurisdiction to decide on interlocutory appeal claims of prosecutorial misconduct before a grand jury. See United States v. Storey, 2 F.3d 1037, 1040-41 (10th Cir. 1993) (holding that Appellant's claims of

---

[13](...continued)
any, the district court might order before the documents are given to the grand jury. Indeed, at this point, these documents are not even in the court record, so we have no idea what they contain or what specific objections the Appellant might make to their release to the grand jury. These unknowns dictate that the matter is not yet ripe for review.

[14]The Perlman rule is inapplicable to {Order 3} because Attorney #1's compliance with the district court's order would not jeopardize any justiciable interest of Appellant.

prosecutorial misconduct before the grand jury did not fall within the application of the collateral order doctrine's exception to the final judgment rule, and dismissing defendant's appeal of his motion to dismiss the grand jury's indictment); United States v. Taylor, 798 F.2d 1337, 1339-40 (10th Cir. 1986). Although we are sympathetic to Appellant's concerns about the potential harm to reputation that can ensue if the grand jury returns a true bill, we have previously explained that claims of improper influence, inflammatory behavior, and cumulative misconduct before the grand jury do not give rise to a right not to be tried or a right whose remedy permits the interlocutory dismissal of the indictment. See Storey, 2 F.3d at 1041.

Accordingly, we lack jurisdiction in this interlocutory appeal to consider these claims.

## III. PRIVILEGE ANALYSIS

A grand jury's "investigative powers are necessarily broad" and its "authority to subpoena witnesses is not only historic, but essential to its task." Branzburg v. Hayes, 408 U.S. 665, 688 (1972) (internal citations omitted). Although "the powers of the grand jury are not unlimited," id., "[n]owhere is the public's claim to each person's evidence stronger than in the context of a valid grand jury subpoena," In re Sealed Case, 676 F.2d 793, 806 (D.C. Cir. 1982). Only a very limited number of recognized privileges—protected by a constitutional, common-law, or statutory privilege—provide legitimate grounds

for refusing to comply with a grand jury subpoena. <u>Branzburg</u>, 408 U.S. at 688. The Supreme Court "has cautioned that such . . . privileges must be strictly construed and accepted only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth." <u>In re Qwest Commc'ns Int'l Inc.</u>, 450 F.3d 1179, 1185 (10th Cir. 2006) (internal quotation marks omitted); <u>see also</u> <u>Trammel v. United States</u>, 445 U.S. 40, 50 (1980).

Now turning to the merits, we initially address Appellant's specific grounds for invocation of two common-law privileges: attorney-client and work product. We will deal with each privilege in turn. We review "the district court's rulings on attorney-client privilege and work-product protection for abuse of discretion. Underlying factual determinations are reviewed for clear error and purely legal questions are reviewed de novo." <u>United States v. Ary</u>, 518 F.3d 775, 782 (10th Cir. 2008) (citations omitted).

A. <u>Attorney Client Privilege</u>

"The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law." <u>Upjohn Co. v. United States</u>, 449 U.S. 383, 389 (1981). "Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." <u>Id.</u>

- 15 -

The attorney-client privilege protects "'confidential communications by a client to an attorney made in order to obtain legal assistance' from the attorney in his capacity as a legal advisor." In re Grand Jury Subpoena Duces Tecum Issued on June 9, 1982, 697 F.2d 277, 278 (10th Cir. 1983) (quoting Fisher v. United States, 425 U.S. 391, 403 (1976)). "[T]he mere fact that an attorney was involved in a communication does not automatically render the communication subject to the attorney-client privilege," Motley v. Marathon Oil Co., 71 F.3d 1547, 1550-51 (10th Cir. 1995); rather, the "communication between a lawyer and client must relate to legal advice or strategy sought by the client," United States v. Johnston, 146 F.3d 785, 794 (10th Cir. 1998).

Although this description of the attorney-client privilege suggests the privilege only applies one way, operating to protect the client's communications to a lawyer, it is generally also recognized that "the privilege will protect at least those attorney to client communications which would have a tendency to reveal the confidences of the client." Kenneth S. Brown, McCormick on Evidence § 89 (6th ed. 2006); see also United States v. Defazio, 899 F.2d 626, 635 (7th Cir. 1990) ("Communications from attorney to client are privileged only if they constitute legal advice, or tend directly or indirectly to reveal the substance of a client confidence."). However, "when an attorney conveys to his client facts

acquired from other persons or sources, those facts are not privileged."[15]  In re

Sealed Case, 737 F.2d 94, 99 (D.C. Cir. 1984) (internal quotation omitted); see

also McCormick § 89 (The "prevailing rule [of the attorney-client privilege] does

not bar divulgence by the attorney of information communicated to him or his

agents by third persons[, n]or does information so obtained become privileged by

being in turn related by the attorney to the client in the form of advice.").

"The burden of establishing the applicability of [the attorney-client]

privilege rests on the party seeking to assert it."  In re Grand Jury Subpoena, 697

F.2d at 279.  "The party must bear the burden as to specific questions or

documents, not by making a blanket claim."  In re Foster, 188 F.3d 1259, 1264

(10th Cir. 1999).  The privilege "must be strictly constructed and accepted 'only

to the very limited extent that permitting a refusal to testify or excluding relevant

evidence has a public good transcending the normally predominant principle of

utilizing all rational means for ascertaining truth.'"  Trammel, 445 U.S. at 50

---

[15]The Appellant and the district court refer to this as the "conduit" exception to the attorney-client privilege, because under this scenario the communication is not privileged since the attorney serves only as a "conduit" to relay information from a third party to the client.  The government, however, argues that this sort of communication should not be considered an exception to the attorney-client privilege—rather, according to the government, these communications fall outside the scope of the general rule because they do not involve any client confidence.  We need not resolve the proper characterization of "conduit" information, as all parties are agreed, for one reason or another, that "conduit" information is not protected from disclosure under the attorney-client privilege.

(quoting Elkins v. United States, 364 U.S. 206, 234 (1960) (Frankfurter, J., dissenting)).

We now turn to the issue of whether the government's questions are subject to the attorney-client privilege because they involve confidential communications with respect to the seeking of legal advice. Before us are nine questions that the district court concluded are not privileged. We agree.

The nine questions asked for several general types of information; we will consider each type of requested information in turn. The first category of questions requested Attorney #1 to testify regarding statements he had previously made to the government or that the government made to him.[16] These questions clearly are not protected by attorney-client privilege; the questions do not even involve attorney-client communications. A communication by an attorney to a third party or a communication by a third party to an attorney cannot be invoked as privileged. See In re Grand Jury Subpoenas (United States v. Anderson), 906 F.2d 1485, 1492 (10th Cir. 1990) ("Anderson") ("The purpose behind the attorney-client privilege is to preserve *confidential communications between attorney and client.*" (emphasis added to final phrase)).

The second category of questions requested Attorney #1 to testify regarding information that he received from the government and then communicated to

---

[16]{REDACTED}

Appellant.[17]  These questions thus requested "conduit" information—whether a third party's statement was passed along by the attorney to the client.  Where questions only request information regarding communications where the attorney was acting as a "conduit" for non-confidential information, the client may not invoke the attorney-client privilege.[18]  See DeFazio, 899 F.2d at 635; In re Grand Jury Testimony of Attorney X, 621 F. Supp. 590, 592 (E.D.N.Y. 1985) ("Attorney X").  These questions did not request information regarding privileged legal advice provided by the attorney to his client, nor would the questions tend, directly or indirectly, to require the attorney to reveal the substance of any legal confidence.  See DeFazio, 899 F.2d at 635.

The third set of questions at issue here requested that both Attorney #1 and Attorney #2 testify regarding information that Attorney #1 received from the government and then passed on to Attorney #2.[19]  These questions also request "conduit" information and are substantively the same as the second set of questions.  The mere fact that the information was passed along to another attorney instead of to the client does not cloak the communication in privilege.

---

[17]{REDACTED}

[18]{REDACTED}

[19]Under this category of questions, the district court ordered Attorney #1 to answer the following question: {REDACTED}

Finally, we address the remaining set of questions concerning Appellant's {employee} John Doe's[20] contact and communications with Appellant's counsel, Attorney #2.[21]  However, we need not resolve whether the fact that Doe contacted Attorney #2 at a certain time or the fact that Doe read a certain question to his attorney is a privileged communication.  Even if such information was initially privileged, Appellant waived that privilege by submitting Doe's affidavit, describing these communications, to the district court in support of Appellant's earlier motions to remove the AUSA from proceeding as counsel for the government in the § 1001 investigation and in support of Appellant's motion to quash the testimonial subpoena issued to Attorney #1.  Because confidentiality is the key to maintaining the attorney-client privilege, a party waives the privilege when he voluntarily discloses to a third party material or information that he later claims is protected.  See In re Qwest Commc'ns Int'l Inc., 450 F.3d at 1185; United States v. Bernard, 877 F.2d 1463, 1465 (10th Cir. 1989) ("Any voluntary disclosure by the client is inconsistent with the attorney-client relationship and waives the privilege.").  Here, although the court record was sealed because it related to an ongoing grand jury investigation, the affidavit was also given to the government.  Therefore, Appellant waived any privilege that attached to Doe's

---

[20]We assume, without deciding, that Appellant's {employee} was acting as an agent for Appellant in communicating with his attorneys.

[21]{REDACTED}

communications with Attorney #2 in preparing {Form 1} when he voluntarily submitted Doe's affidavit in the proceedings below.

B. Work-Product Doctrine

"The work-product doctrine[ was] first recognized by the Supreme Court in Hickman v. Taylor, 329 U.S. 495, 509-11 (1947)."[22] Ary, 518 F.3d at 783 (additional citation omitted). In that case the Court rejected "an attempt, without purported necessity or justification, to secure written statements, private memoranda and personal recollections [of witness interviews] prepared or formed by an adverse party's counsel in the course of his legal duties." Hickman, 329 U.S. at 510. Underlying the work-product doctrine is a strong public policy interest in protecting the "'adversary trial process itself.'" In re Foster, 188 F.3d at 1272 (quoting Moody v. IRS, 654 F.2d 795, 800 (D.C. Cir. 1981)). At its core, the work-product doctrine serves to protect society's interest in "the adversary system by shielding litigants' work-product from their opponents, and thus freeing lawyers to create such materials without fear of discovery and exploitation." Id. (citing Hickman, 329 U.S. at 510-11). The doctrine achieves this purpose by "shelter[ing] the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case."

---

[22]Although Hickman was a civil case, and the work-product doctrine is most frequently asserted as a bar to discovery in civil litigation, the doctrine also has applicability to criminal cases. See United States v. Nobles, 422 U.S. 225, 238 (1975). And a party can invoke the work-product doctrine in response to a grand jury's investigation. See In re Grand Jury Proceedings, 156 F.3d at 1042.

- 21 -

Nobles, 422 U.S. at 238.  As such, the work-product doctrine only prevents

disclosure of information that was prepared by the attorney in anticipation of

litigation or for trial.[23]  In re Grand Jury Proceedings, 156 F.3d at 1042.  Similar

to the attorney-client privilege, "[t]he party asserting work product privilege has

the burden of showing the applicability of the doctrine."  Id.

Appellant has failed to establish that any of the same nine questions request

protected work-product.  The majority of questions focus on the government's

attempt to elicit whether Appellant's attorneys passed on certain information to

Appellant.  The questions do not seek any legal advice, nor do the questions delve

into the attorneys' impressions about the facts that might have been conveyed to

Appellant.[24]  See Attorney X, 621 F. Supp. at 593 (conduit questions are not

protected under the work-product doctrine).  The questions do not seek legal

conclusions, opinion or legal theories created in anticipation of litigation.  See

Grace United Methodist Church v. City of Cheyenne, 451 F.3d 643, 668 (10th

---

[23]The work product doctrine "is broader than and distinct from the attorney-client privilege."  In re Foster, 188 F.3d at 1272 (citing Nobles, 422 U.S. at 238, n.11).

[24]Additionally, we note that Attorney #1 waived any privilege concerning communications about Appellant's status in the grand jury investigation when he testified that he told Appellant that he was a subject in {REDACTED} and after receiving the {REDACTED} "subject letter."  "[A] litigant cannot use the work product doctrine as both a sword and shield by selectively using the privileged [information or documents] to prove a point but then invoking the privilege to prevent an opponent from challenging the assertion."  Frontier Refining, Inc. v. Gorman-Rupp Co., 136 F.3d 695, 704 (10th Cir. 1998).

Cir. 2006) ("[W]ork product protection only applies to attorneys' or legal representatives' mental impressions, conclusions, opinions, or legal theories authored in anticipation of litigation."). The questions seek only factual confirmation concerning events the attorney personally witnessed (either as the receiver or giver of information). See Resolution Trust Corp. v. Dabney, 73 F.3d 262, 266 (10th Cir. 1995) ("[T]he work product doctrine is intended only to guard against divulging the attorney's strategies and legal impressions[;] it does not protect facts concerning the creation of work product or facts contained within work product."). Therefore these questions do not ask for protected attorney work product because they do not seek the attorneys' mental impressions—the questions only ask for the attorneys' testimony regarding facts they observed firsthand.

The other questions, regarding Attorney #2's contacts with John Doe, likewise do not seek any legal advice or attorney impressions. These questions only attempt to verify whether certain events occurred: the fact that Attorney #2 talked with Doe on a certain date or the fact that Doe read something to Attorney #2.[25] Moreover, as to the questions relating to Doe's consultations with Attorney #2 in the preparation of {Form 1}, Appellant has failed to establish that

---

[25]As in the context of our discussion of the attorney-client privilege, Doe's affidavit—which Appellant provided to the government—waived his ability to assert that his staff member's conversations and contacts with Attorney #2 regarding preparation of {Form 1} are protected by the work-product doctrine.

any of these contacts or communications were related to Attorney #2's legal services in anticipation of litigation or for trial.  See In re Grand Jury Proceedings, 156 F.3d at 1042.  Doe's communications with Attorney #2 were in preparation for submitting Appellant's application materials for a {Form 1} position—the communications were not in preparation for litigation.

Here, Appellant has made a very broad argument:  that if his attorney was forced to disclose his recollection of any conversations, then his attorney's recollections will necessarily involve work product because they will reflect his attorney's own mental impressions and necessarily will reflect what the attorney considers most important.  We reject that very broad-brushed claim of work product in the context asserted by Appellant.  The cases Appellant cites for this proposition all have to do with an attorney's recollections of interviewing witnesses and attending client interviews.[26]  Interviewing witnesses for purposes of litigation is very different from acting as a conduit to convey facts from a third party to a client.  See Attorney X, 621 F. Supp. at 593-94.

## C. Sixth Amendment

Appellant also argues that the testimonial subpoenas issued to Attorney #1 and Attorney #2 violate his Sixth Amendment right to counsel.  Appellant's claims are foreclosed by our precedent in Anderson, 906 F.2d at 1493.

---

[26]The cases Appellant relies on are Hickman, 329 U.S. 495; In re Grand Jury Proceedings (Duffy), 473 F.2d 840 (8th Cir. 1973); and In re Grand Jury Subpoena (Zerendow), 925 F. Supp. 849 (D. Mass. 1995).

D. {State} Rules of Professional Conduct

Appellant further argues that the district court erred in denying its motion to quash because the government is bound by state ethics rules, and the state rule, {REDACTED}, required the government "to establish that the information sought was not protected by privilege and could not be obtained elsewhere." (Aplt. Br. at 55.) Even if the {state} Rules of Professional Conduct were to apply to federal prosecutors' practice before a federal grand jury—a proposition about which we have considerable doubt—the {state} Rules do not bestow any rights upon Appellant that he can invoke to this appellate court or to the district court in attempting to quash the subpoena. The Rules state that their purpose is "to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies." {REDACTED}. {And the Rules provide that a violation should not "give rise to a cause of action," nor does it "imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement."} Id.

## IV. CONCLUSION

For the foregoing reasons, to the extent Appellant appeals from the district court's order to Attorney #1 to produce billing records *in camera* and the district court's denial of his motion for relief from prosecutorial misconduct, we

DISMISS for lack of jurisdiction.  In all other respects, we AFFIRM the district

court's orders.[27]

---

[27]In light of this court's ruling, in so far as the district court has stayed the relevant orders directed to Attorney #1 and Attorney #2, we assume that the district court will lift its stay so these long-delayed grand jury proceedings can move forward expeditiously.