PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-1697
_____

IN RE: GRAND JURY


ABC CORP.; JOHN DOE 1; JOHN DOE 2,
                              Appellants


_____

On Appeal from the United States District Court
For the Eastern District of Pennsylvania
(D.C. Grand Jury Action No. 2-09-gj-00006)
District Judge: Honorable Harvey Bartle, III
_____

Argued April 19, 2012
_____

Before: AMBRO, HARDIMAN and
VANASKIE, Circuit Judges

(Opinion file: May 24, 2012)

Stephen R. LaCheen, Esq.  (ARGUED)
LaCheen, Wittels & Greenberg, LLP
1429 Walnut Street, 13th Floor
Philadelphia, PA  19102

   *Counsel for Appellants ABC Corp. and John Doe 1*

Ian M. Comisky, Esq.  (ARGUED)
Matthew D. Lee, Esq.
Blank Rome LLP
One Logan Square
130 North 18th Street
Philadelphia, PA  19103

   *Counsel for Appellant John Doe 2*

Frank P. Cihlar, Esq.
S. Robert Lyons, Esq.
Alexander P. Robbins, Esq.  (ARGUED)
United States Department of Justice, Tax Division
P.O. Box 502
Washington, DC   20044

Karen L. Grigsby, Esq.
Office of the United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA   19106

   *Counsel for the Government*

_____

OPINION OF THE COURT
_____

AMBRO, <u>Circuit Judge</u>

ABC Corp., John Doe 1, and John Doe 2 seek to appeal an order of the District Court requiring ABC Corp., Blank Rome LLP, and LaCheen, Wittels & Greenberg, LLP to produce certain documents to the Government as part of an ongoing grand jury investigation.[1]  The sought-after documents are currently in the custody of Blank Rome, a law firm that represents John Doe 2.  Blank Rome is housing the documents at the request of LaCheen Wittels, a law firm representing ABC Corp. and John Doe 1.  Appellants claim the attorney-client privilege — ABC Corp. is the privilege holder — and the work product rule shield the documents from disclosure.  The District Court disagreed, concluding that the crime-fraud doctrine vitiates any privilege or work product protection.

When a district court orders the production of supposedly privileged documents, its order usually is not an immediately appealable final decision.  To obtain immediate appellate review, an objecting privilege holder must disobey the disclosure order, be held in contempt, and then appeal the contempt order.  Appellants argue that *Perlman v. United States*, 247 U.S. 7 (1918), provides an exception to the contempt rule here because the documents are in the custody of a third party (Blank Rome) who is not willing to suffer contempt for the sake of an immediate appeal.

We disagree, and hold instead that *Perlman* does not allow an immediate appeal of a district court's order mandating the production of supposedly privileged documents when (1) the court's order directs the privilege

---

[1] To maintain the secrecy of the investigation, we refer to the facts in general terms.

holder itself to produce the documents and (2) the privilege holder has, or may obtain, custody of the documents. In short, *Perlman* does not apply when the traditional contempt route is open to the privilege holder.[2] That route is open to ABC Corp. The District Court ordered the company to produce the documents, and it may obtain custody of the documents from its agents. If ABC Corp. wants pre-conviction appellate review of the District Court's crime-fraud ruling, it must take possession of the documents and defy that Court's disclosure order before appealing any resulting contempt sanctions. Because it has not yet met these preconditions, we dismiss for lack of appellate jurisdiction.

## I. Background

ABC Corp. is an administratively "dissolved" corporation. It was formed in early 2004 and it ceased business operations in late 2005. John Doe 1 was the company's President and sole indirect shareholder and John Doe 2 is his son. To repeat, LaCheen Wittels represents ABC Corp. and John Doe 1 while Blank Rome represents John Doe 2. The law firms have, however, a joint-defense agreement with respect to the three Appellants.

In mid-2010, Appellants learned that the Government was investigating the tax implications of ABC Corp.'s acquisition and sale of certain closely held companies. In December 2010, the Government issued a grand jury subpoena to ABC Corp.'s former vice president of corporate acquisitions as the company's custodian of records. The subpoena sought any and all records relating to transactions

---

[2]As we explain below, there is a *sui generis* exception to our holding for the President of the United States. *See infra* note 4.

and business dealings between ABC Corp. and specific entities and individuals.

At some point the Government received access to, or copies of, certain ABC Corp. documents from a law firm that previously represented the company. The firm withheld certain documents it claimed were privileged, but it did not supply the Government with a privilege log. After LaCheen Wittels and Blank Rome assumed their current representations, the former firm of ABC Corp. transferred the documents to Blank Rome. According to Appellants, LaCheen Wittels did not have sufficient space to store the documents, so Blank Rome agreed to hold them as custodian.

In a January 2011 letter, LaCheen Wittels took the position that the Government did not effectively serve the subpoena issued to ABC Corp.'s former vice president. Nonetheless, in March 2011, LaCheen Wittels and Blank Rome provided the Government with a privilege log, which they revised in April 2011, for the documents ABC Corp.'s former firm once withheld.

Because ABC Corp. refused to accept service of the subpoena issued to its former employee, the Government issued grand jury subpoenas to LaCheen Wittels and Blank Rome in May 2011. The subpoenas sought all documents the two firms received from ABC Corp.'s former law firm relating to ABC Corp. and another entity. In response to these subpoenas, the law firms produced approximately 24 boxes of documents. These were the same documents that ABC Corp.'s former firm had previously produced. They continued to withhold, however, the documents listed on the April 2011 privilege log, and provided the Government with another privilege log in June 2011 for additional documents withheld.

The Government then filed an *ex parte* motion to compel ABC Corp., Blank Rome, and LaCheen Wittels to produce 171 of the 303 documents identified on the privilege logs. It argued that the documents should be produced based on the crime-fraud doctrine, which provides that evidentiary privileges may not be used to shield "communications made for the purpose of getting advice for the commission of a fraud or crime." *United States v. Zolin*, 491 U.S. 554, 563 (1989) (internal quotations omitted).

On March 8, 2012, the District Court granted the Government's motion and, in a two-page order, directed ABC Corp., Blank Rome, and LaCheen Wittels to produce 167 of the 171 requested documents by March 16. The 167 documents comprise roughly 800 pages. In an accompanying 42-page opinion, the District Court concluded that the crime-fraud doctrine barred ABC Corp.'s privilege and work product claims. It did not resolve whether the Government properly served ABC Corp. with a subpoena by serving its former vice president, but noted that "[t]his issue is of no moment here. There is no allegation that the subpoenas were served improperly on Blank Rome and LaCheen Wittels[,] who are presently in the possession of the documents the government seeks." Dist. Ct. Op. at 9.

Five days later, Appellants filed a timely notice of appeal and a motion for a stay pending appeal. We granted the stay and expedited the appeal.[3]

---

[3] This is the second time Appellants have attempted a *Perlman* appeal in this matter. *See In re Grand Jury Matter #4*, No. 11-4105 (3d Cir. Dec. 20, 2011) (summarily dismissing for lack of jurisdiction). According to Appellants, the documents at issue in that appeal had already been turned

**II. Discussion**

The District Court had jurisdiction under 18 U.S.C. § 3231. Our jurisdiction is in dispute, but we have jurisdiction to determine our jurisdiction. *Alaka v. Att'y Gen.*, 456 F.3d 88, 94 n.8 (3d Cir. 2006).

A. Finality and the Contempt Rule

"[T]he right to a judgment from more than one court is a matter of grace and not a necessary ingredient of justice . . . ." *Cobbledick v. United States*, 309 U.S. 323, 325 (1940). Congress has bestowed such grace by granting the Courts of Appeals jurisdiction over "final decisions" of the district courts. 28 U.S.C. § 1291. Whether a decision is "final" depends on its effects. *Marcus v. Twp. of Abington,* 38 F.3d 1367, 1370 (3d Cir. 1994). "Ordinarily, a final decision will have two effects. First, the decision will fully resolve all claims presented to the district court. Second, after the decision has been issued, there will be nothing further for the district court to do." *Aluminum Co. of America v. Beazer East, Inc.,* 124 F.3d 551, 557 (3d Cir. 1997); *see also Catlin v. United States,* 324 U.S. 229, 233 (1945) ("A 'final decision' generally is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.").

When a district court orders a witness — whether a party to an underlying litigation, a subject or target of a grand jury investigation, or a complete stranger to the proceedings

over to and reviewed by the Government by the time the panel issued its order. Here, in contrast, the documents are not in the Government's possession and the Government has not reviewed them.

— to produce documents, the district court's order generally is not considered an immediately appealable "final decision[]" under § 1291.  *See United States v. Ryan*, 402 U.S. 530, 532–34 (1971); *Cobbledick*, 309 U.S. at 326–29; *Alexander v. United States*, 201 U.S. 117, 118–22 (1906).  It is well-settled that a witness who "seeks to present an objection to a discovery order immediately to a court of appeals must refuse compliance, be held in contempt, and then appeal the contempt order."  *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 18 n.11 (1992); *see also Ryan*, 402 U.S. at 532–34; *Cobbledick*, 309 U.S. at 326–29; *Alexander*, 201 U.S. at 118–22; *DeMasi v. Weiss*, 669 F.2d 114, 121–23 (3d Cir. 1982).  A district court's contempt order is itself immediately appealable because it is a final judgment imposing penalties on the willfully disobedient witness in what is effectively a separate proceeding.  The Supreme Court has explained that

> if the witnesses refuse to comply with [a disclosure order] and the court then exercises its authority either to punish them or to coerce them into compliance, that will give rise to another case or cases to which the witnesses will be parties on the one hand, and the government, as a sovereign vindicating the dignity and authority of one of its courts, will be a party on the other hand.

*Alexander*, 201 U.S. at 122 (quotations omitted).  "[A] judgment adverse to the witnesses in that proceeding or case will be a final decision."  *Id.*

8

The contempt route to an immediately appealable final decision is a firmly established feature of federal appellate procedure, stretching back to at least the Supreme Court's 1906 decision in *Alexander*, but the decision to travel that route must not be made lightly. In this regard the Supreme Court has

> consistently held that the necessity for expedition in the administration of the criminal law justifies putting one who seeks to resist the production of desired information to a choice between compliance with a trial court's order to produce prior to any review of that order, and resistance to that order with the concomitant possibility of an adjudication of contempt if his claims are rejected on appeal.

*Ryan*, 402 U.S. at 533. The rule, "though at times a harsh one, was formulated to discourage appeals in all but the most serious cases." *In re Grand Jury Proceedings* (*Appeal of FMC Corp.*), 604 F.2d 798, 800 (3d Cir. 1979). Requiring a person who objects to a disclosure order to "refuse to comply, be subjected to sanctions in contempt, and then appeal from the sanctions. . . . [,] puts the objecting person's sincerity to the test by attaching a price to the demand for immediate review." *Wilson v. O'Brien*, 621 F.3d 641, 643 (7th Cir. 2010). It forces the objector to weigh carefully the likelihood of success of its challenge to the underlying disclosure order against the seriousness of the sanctions it would face — whether a hefty monetary fine, incarceration, or some other penalty — if it ignores the order to disclose. It also forces the

9

objector to assess the importance it attaches to avoiding the ordered disclosure and protecting any associated privileges.

The severity of the contempt rule is well justified because immediate appellate review of disclosure orders creates great delay in our justice system and runs especially against the principle of speedy trials for allegations of criminal conduct. *See Di Bella v. United States*, 369 U.S. 121, 126 (1962) ("[T]he delays and disruptions attendant upon intermediate appeal are especially inimical to the effective and fair administration of the criminal law."); *Cobbledick*, 309 U.S. at 325 ("These considerations of policy are especially compelling in the administration of criminal justice. . . . [E]ncouragement of delay is fatal to the vindication of the criminal law."). Although an appeal of a contempt order may itself involve a disruption of the underlying proceedings, "not to allow this interruption would forever preclude review of the witness' claim, for his alternatives are to abandon the claim or languish in jail." *Cobbledick*, 309 U.S. at 328.

## B. The *Perlman* Exception to the Contempt Rule

In *Perlman*, the Supreme Court carved out an exception to the rule that a custodian of documents must stand in contempt of a discovery order before an immediate appeal may be taken. 247 U.S. at 8–13. In that case, Louis Perlman testified on behalf of his company in a patent infringement suit in District Court. *Id.* at 8. When the company moved to dismiss its suit without prejudice, the District Court granted the company's motion but it ordered the court clerk to impound the exhibits Perlman used during his testimony and to maintain them under seal. *Id.* at 8–9.

Soon after, the Government began a grand jury investigation of Perlman, suspecting him of having

10

committed perjury during his testimony. *Id.* at 11–12. To assist in the investigation, the Government sought an order from the District Court directing the court clerk to produce the exhibits Perlman used during his testimony. *Id.* at 9–10. Perlman objected, claiming that use of the exhibits as a basis for indictment against him would be an unreasonable search and seizure and would make him a compulsory witness against himself in violation of the Constitution's Fourth and Fifth Amendments. *Id.* at 10, 13. The District Court rejected Perlman's challenge and ordered the clerk to produce the exhibits to the Government. *Id.* at 10–11.

When Perlman ultimately appealed to the Supreme Court, which heard the case under its then-obligatory appellate jurisdiction, the Government argued that the District Court's disclosure order was not appealable. *Id.* at 12. The Court disagreed, saying only that

> [t]he second contention of the government is somewhat strange, that is, that the order granted upon its solicitation was not final as to Perlman but interlocutory in a proceeding not yet brought and depending upon it to be brought. In other words, that Perlman was powerless to avert the mischief of the order but must accept its incidence and seek a remedy at some other time and in some other way. We are unable to concur.

*Id.* at 12–13.

Whatever else *Perlman* may require, we can discern the *sine qua non*: when a court orders a custodian that is not

11

a privilege holder to produce purportedly privileged documents, the privilege holder may immediately appeal the disclosure order only when it is impossible for the privilege holder itself to disobey the order, be held in contempt, and appeal any contempt sanctions. In *Perlman*, the District Court did not order Perlman to produce any documents. Its order was directed only to the court clerk. There was simply no court order for Perlman to disobey. Furthermore, Perlman could not have obtained custody of the exhibits from the court clerk (and then stood in contempt of a later disclosure order directed at him) because a previous court order directed the clerk to impound the exhibits and maintain custody of them under seal. Perlman thus was "powerless to avert the mischief of the [disclosure] order" because he could not take the traditional contempt route to a final decision.[4]

---

[4] To be clear, it is a necessary (but not sufficient) prerequisite to *Perlman*'s application that the traditional contempt route is closed to the privilege holder. *See* 15B Charles Alan Wright et al., *Federal Practice & Procedure* § 3914.23 (2d ed. 1992) ("The *Perlman* decision never has meant that appeal can be taken simply because the alternative of disobedience and contempt is not available. Orders denying discovery do not afford any opportunity for disobedience, yet are not appealable on this theory.").

There is a unique exception to our holding that *Perlman* cannot apply when the contempt route remains open to the objector. It applies when the objector is the President of the United States. *See United States v. Nixon*, 418 U.S. 683, 691–92 (1974) (applying *Perlman* and holding that to require the President to travel the contempt route "would be unseemly, and would present an unnecessary occasion for

In this vein, we have explained that "the *Alexander-Cobbledick-Ryan* [contempt] rule restricting appellate review is limited to situations where the contempt route to a final order is available to the appellant." *In re Matter of Grand Jury Applicants* (*C. Schmidt & Sons, Inc.*), 619 F.2d 1022, 1025 (3d Cir. 1980). In contrast, appellants in *Perlman* and its progeny "were not the targets of the subpoena itself, which meant that the contempt route for obtaining an appeal was not available to them." *In the Matter of Grand Jury Empanelled Aug. 14, 1979* (*Appeal of TRW Credit Data, Inc.*), 638 F.2d 1235, 1237 (3d Cir. 1981).

Consistent with this understanding of the contempt rule and the *Perlman* exception, we have permitted an appeal of a disclosure order adverse to the attorney-client privilege when the privilege holder was *not* subpoenaed. *See In re Grand Jury Proceedings* (*Appeal of FMC Corp.*), 604 F.2d 798 (3d Cir. 1979). In *FMC Corp.*, the Government issued a grand jury subpoena to Douglas Kliever, FMC's former outside counsel. *Id.* at 799–800. Kliever refused to produce certain documents, asserting the attorney-client privilege and work product protection. *Id.* The District Court granted the Government's motion to compel and ordered Kliever to produce the documents, finding that the crime-fraud exception barred any privilege or work product protection. *Id.*

---

constitutional confrontation between two branches of the Government"); 15B Wright, *supra*, § 3914.23 ("The Court's language [in *Nixon*] suggested that it was not anxious to create a corrosive principle that might allow others to bypass the disobedience and contempt path to appeal."). Appellants do not suggest that *Nixon* by analogy supports jurisdiction here.

13

FMC appealed "as the *nonsubpoenaed* holder of the attorney-client privilege and assert[ed] a right to raise the work product privilege as well." *Id.* at 801 (emphasis added). It claimed that Kliever would not disobey the district court's order nor would it ask him to do so. *Id.* at 800. We began our jurisdictional analysis of FMC's appeal by noting that the company had "not been subpoenaed to produce the documents and therefore would not [have been] held in contempt were they not produced." *Id.* A contempt citation would apply only to its former attorney, Kliever. We then turned to our precedent, and noted that "[r]easoning pragmatically that a witness will not usually undergo the penalties of contempt in order to preserve someone else's privilege, the courts permit appeal by an intervenor [*i.e.*, the privilege holder] without the necessity of a sentence for contempt." *Id.* at 800-01 (quoting *In re Grand Jury Proceedings* (*Appeals of Cianfrani & Kalman*), 563 F.2d 577, 580 (3d Cir. 1977)) (citing *Perlman*, 247 U.S. at 7, 15). Thus we concluded that we had jurisdiction. *Id.* at 801.

Some of our sister Courts of Appeals also have recognized that *Perlman* does not apply when the contempt route is open to the privilege holder. For example, the Second Circuit has explained that "in *Perlman* . . . 'the contempt avenue for ultimately securing review' of the district court's production order 'was not available since Perlman was not being required to do anything.'" *In re Air Crash at Belle Harbor, N.Y. on Nov. 12, 2001*, 490 F.3d 99, 105 (2d Cir. 2007) (quoting *Nat'l Super Spuds, Inc. v. N.Y. Mercantile Exch.*, 591 F.2d 174, 179 (2d Cir. 1979)). "[T]he *Perlman* exception is relevant only to appeals brought by the holder of a privilege where the disputed subpoena is directed at *someone else*." *Id.* at 106 (emphasis added). "It is impossible for such an appellant to pursue the normal avenue of review — submission to contempt — because, like Perlman, that appellant has not been required to do anything

14

by the district court." *Id.* Opinions from the Seventh and Tenth Circuits reflect a similar understanding. *See Wilson*, 621 F.3d at 642–43 ("contrast[ing]" *Perlman* with those situations in which "an order of disclosure is directed against a person whose legal interests are affected" because "that person *has* a means to obtain appellate review" — namely, the contempt route) (emphasis in original); *In re Motor Fuel Temperature Sales Practice Litig.*, 641 F.3d 470, 485-86 (10th Cir. 2011) (refusing to apply *Perlman* when non-party trade associations who objected to disclosing purportedly privileged information could "refuse to comply with the subpoenas directed to themselves, incur contempt citations, and appeal from the contempt orders").

C. Whether the Contempt Route Remains Open to ABC Corp.

ABC Corp. is subject to a court order to produce documents. Unlike Louis Perlman, the company has been required to do something. Appellants nonetheless contend that the contempt route is not open to ABC. While we are sensitive to some of Appellants' practical concerns, we cannot agree that *Perlman* permits this appeal.

Appellants assert that the District Court's order "erroneously included" ABC Corp. and in fact "should not have been directed to [the company] at all." Appellants' Reply Br. at 5. It therefore cannot be held in contempt for disobeying the order. According to Appellants, the District Court should not have ordered ABC Corp. to produce the documents because the Government never properly served the company with a subpoena and, in any event, ABC Corp. does not have custody of the documents.

These arguments miss the mark. An order does not become immediately appealable simply because a putative

15

appellant believes that it is, in one way or another, wrong or improper. If ABC Corp. believes that the District Court's order is reversible for whatever reason — whether because it was not preceded by proper service of a subpoena, because it is the result of an improper crime-fraud ruling, or for any other reason — and it wishes to present its challenge in an immediate appeal, it must disobey the order and take the contempt route. Until and unless it is vacated, the District Court's order — not the grand jury's subpoena — binds the company and compels production of the documents. *See Brown v. United States*, 359 U.S. 41, 49 (1959) ("A grand jury is clothed with great independence in many areas, but it remains an appendage of the court, powerless to perform its investigative function without the court's aid, because powerless itself to compel the testimony of witnesses."), *overruled on other grounds by Harris v. United States*, 382 U.S. 162, 167 (1965).

Appellants then claim that, even if the District Court's order were valid, ABC Corp. could not disobey that order because it does not have custody of the documents. To repeat, Blank Rome is currently holding the requested documents and it holds them at the request of ABC Corp.'s counsel, LaCheen Wittels. The Government's response is simple: ABC Corp. may take the documents from Blank Rome. It is undisputed that Appellants and their respective law firms have a joint-defense agreement in place. If the privilege holder-client ABC Corp. directs its counsel LaCheen Wittels to direct the custodian Blank Rome to transfer the documents to ABC Corp.'s custody, then the agents must oblige the principal. *See In re Grand Jury*, 821 F.2d 946, 951 (3d Cir. 1987) (noting that, in the context of responding to a subpoena, "possession" means "legal control"). We agree with the Government.

Appellants contend the Government's position ignores the seriousness of a grand jury subpoena and court order. Appellants' Reply Br. at 8. After all, the law firms are subject to the same court order as the company. According to Appellants,

> [h]ad Blank Rome, after receipt of a grand jury subpoena, done anything other than preserve the documents, the government would surely charge that [ABC Corp.] and, for that matter, the law firms, were guilty of obstruction of justice by engaging in behavior intended to thwart the grand jury's investigation. *See* 18 U.S.C. §1503 (obstruction of grand jury investigation). No law firm, under these circumstances, would transfer documents subject to subpoena to the privilege holder and the government's suggestion that this should be the "routine practice" finds no support in case law.

*Id.* at 8–9.

These concerns are understandable. Indeed we too have not found any case in which a court has approved a transfer of documents between multiple parties subject to a disclosure order so that the privilege holder could take the contempt route to immediate appellate review while leaving the other parties free of contempt fears. But here we put those fears to bed. It would not be obstruction of justice, as the Government conceded at oral argument, if Blank Rome

17

transfers the documents to ABC Corp. — after giving the Government and the District Court sufficient notice of the time, place, and other circumstances of the transfer — so that the company can go down the well-established path of disobeying a disclosure order, suffering contempt, and then appealing any contempt sanctions.

Of course, this is not a license for Blank Rome to send the documents out of the jurisdiction or to act in bad faith in any way when transferring the documents to ABC Corp. We have no reason to believe that the firm would do anything of the sort, however. We leave the logistics of how ABC Corp. might take physical custody of documents to the Appellants, the Government, and the District Court if, after considering our opinion here, ABC Corp. wishes to test its luck in a contempt appeal. Should it choose that route, the District Court will exercise its discretion and determine in the first instance the severity of any sanctions it wishes to impose on the company. Although we hold that ABC Corp. must stand in contempt before obtaining pre-conviction appellate review, we do not mean to suggest that the District Court should simply impose a "soft" sanction on the company so that it may do so with ease. As we discuss above, the contempt rule, "though at times a harsh one, was formulated to discourage appeals in all but the most serious cases." *In re Grand Jury Proceedings* (*Appeal of FMC Corp.*), 604 F.2d at 800.[5]

---

[5] As Judge Vanaskie points out, even if ABC Corp. chooses to proceed with a contempt appeal, Blank Rome and LaCheen Wittels would appear, in theory, to be just as much in contempt of the District Court's order as ABC Corp. We are confident, however, that the Government, consistent with its representations to our Court, will not seek to hold the law firms in contempt if Blank Rome transfers the documents to

Next, Appellants posit that even if ABC Corp. could take custody of the documents and disobey the District Court's order, *Perlman* does not require it to do so. Under Appellants' view of the law, what ABC Corp. may be able to do is irrelevant; it is enough in this case that the documents are currently in the custody of a disinterested third-party (Blank Rome) who has made clear that it will not disobey the District Court's order. *See Church of Scientology*, 506 U.S.

ABC Corp. following an agreed procedure. We are equally confident, if not more so, that the District Court will appreciate the impropriety of any contempt sanctions against the law firms here. If the Government, ABC Corp., and the law firms agree to, and execute, a procedure that results in a timely contempt appeal to our Court, the company should bear the full risk of that appeal and be the sole target of any sanctions, absent any bad faith dealings. If our confidence is misplaced, any contempt sanctions imposed on the law firms would be susceptible to reversal as an abuse of the District Court's discretion. *See Green v. United States*, 356 U.S. 165, 188 (1958) ("Appellate courts have here a special responsibility for determining that the [contempt] power is not abused, to be exercised if necessary by revising themselves the sentences imposed"), *overruled on other grounds by Bloom v. Illinois*, 391 U.S. 194 (1968). It is well-established that "only '[t]he least possible power adequate to the end proposed' should be used in contempt cases." *United States v. Wilson*, 421 U.S. 309 (1975) (quoting *Anderson v. Dunn*, 19 U.S. 204, 231 (1821)). Here, the District Court may vindicate the defiance of its order and ensure that the decision to seek pre-conviction appellate review of its privilege ruling is not made lightly by imposing sanctions only on ABC Corp., not the law firms.

at 18 n.11 (noting in a *dictum* that "under the so-called *Perlman* doctrine . . . a discovery order directed at a disinterested third party is treated as an immediately appealable final order because the third party presumably lacks a sufficient stake in the proceeding to risk contempt by refusing compliance").

We disagree. It may be true that the *Perlman* exception *also* requires the disclosure order to be directed at a "disinterested third party." But we do not need to decide in this appeal whether Blank Rome is a "disinterested third party" because the contempt route is open to ABC Corp.[6] As we explain above, whatever else the *Perlman* exception may require, the contempt route must be closed to the objecting privilege holder. That is the very reason the doctrine exists. A privilege holder is not "powerless to avert the mischief," *Perlman*, 247 U.S. at 13, of a disclosure order if it has the power to disobey the order and appeal a contempt sanction.

Finally, Appellants caution that dismissing for lack of appellate jurisdiction in this case would signal the death knell

---

[6] In a pre-*Church of Scientology* case, we permitted a *Perlman* appeal when the privilege holder's *former* counsel held the documents. *In re Grand Jury Proceedings* (*Appeal of FMC Corp.*), 604 F.3d at 799–801. That decision did not explicitly discuss, however, a distinction between former and current counsel of the privilege holder. The Tenth Circuit has expressly rejected any distinction between former and current counsel when determining whether documents are held by a "disinterested third party." *See In re Grand Jury Proceedings*, 616 F.3d 1172, 1179–80 (10th Cir. 2010). In contrast, the Ninth Circuit does recognize a distinction between current and former counsel. *See United States v. Krane*, 625 F.3d 568, 572 n.2 (9th Cir. 2010).

of *Perlman* and its 90-plus years of case law. They say that if a *Perlman* appeal does not lie here, then "privileged documents in the client's possession that are turned over to the attorneys as part of their representation to secure legal advice could never support a claim of appellate jurisdiction under *Perlman*." Appellants' Reply Br. at 7. But if the District Court's order applies to the client and the contempt route is open to it, that is precisely the law. As they conceded at oral argument, Appellants have not pointed us to a single case in which a Court of Appeals has allowed a *Perlman* appeal even though the challenged disclosure order commanded the privilege holder itself to disclose the sought-after documents. This is hardly surprising because such a ruling would undermine the contempt rule first announced in *Alexander* and its 100-plus years of case law. If this were not the law, as the Government correctly points out, "no subpoena recipient would ever have to be held in contempt in order to appeal an adverse privilege determination. . . . A subpoena recipient could simply give the subpoenaed documents to his lawyer and then invoke *Perlman*." Appellee's Br. at 19.[7]

### D. *Mohawk* and its Effect on the *Perlman* Exception

Although not necessary for the disposition of this case, we would be remiss not to address the Supreme Court's recent decision in *Mohawk Indus., Inc. v. Carpenter*, 130 S.Ct. 599 (2009). The Government argues that, as several of our sister Courts of Appeals have suggested, the decision

---

[7] We do not mean to suggest that Appellants and their counsel transferred to Blank Rome the documents at issue simply to create grounds for a *Perlman* appeal. Our point is solely one about the consequences for future cases of finding jurisdiction here.

21

narrows the traditionally understood scope of the *Perlman* exception. We do not have to decide today the effect of *Mohawk* on the *Perlman* exception because we hold that *Perlman* — even in its pre-*Mohawk* form — does not permit this appeal. Nonetheless, the *Mohawk* Court's reasoning explains why refusing a *Perlman* appeal in these circumstances does not make the District Court's crime-fraud ruling effectively unreviewable.

The Supreme Court in *Mohawk* considered "whether disclosure orders adverse to the attorney-client privilege qualify for immediate appeal under the collateral order doctrine," and held that they do not. *Id.* at 603. The Court did not discuss, mention, or even cite *Perlman*, which is not surprising because the *Perlman* doctrine and the collateral order doctrine recognize separate exceptions to the general rules of finality under § 1291. The collateral order doctrine, first announced in *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949), provides that there is a "small class" of collateral rulings that, although they do not terminate the litigation, are appropriately deemed "final" under § 1291. *Mohawk*, 130 S.Ct. at 605 (quoting *Cohen*, 337 U.S. at 545–46). "That small category includes only decisions [1] that are conclusive, [2] that resolve important questions separate from the merits, and [3] that are effectively unreviewable on appeal from the final judgment in the underlying action." *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 45 (1995). Focusing exclusively on the third requirement of the collateral order doctrine, the *Mohawk* Court held that "collateral order appeals are not necessary to ensure effective review of orders adverse to the attorney-client privilege." *Mohawk*, 130 S.Ct. at 606.

Before reaching its conclusion, the Court first pointed out that "[p]ermitting piecemeal, prejudgment appeals . . . undermines 'efficient judicial administration' and encroaches

22

upon the prerogatives of district court judges, who play a 'special role' in managing ongoing litigation." *Id.* at 605 (quoting *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 374 (1981)).[8] Mindful of these costs, the Court did not engage in an "individualized jurisdictional inquiry" based on the facts of the particular case before it, but instead focused on the "entire category" of disclosure orders adverse to the attorney-client privilege. *Id.* (quotations omitted).

Doing so, the Court concluded that "postjudgment appeals generally suffice to protect the rights of litigants and assure the vitality of the attorney-client privilege." *Id.* at 606. "Appellate courts can remedy the improper disclosure of privileged material in the same way they remedy a host of other erroneous evidentiary rulings: by vacating an adverse judgment and remanding for a new trial in which the protected material and its fruits are excluded from evidence." *Id.* at 606–07.

The Court also surveyed other appellate options available to aggrieved privilege holders. It pointed out that, when confronted with an adverse decision from the district court, a party in a civil proceeding can ask the district court to certify, and the court of appeals to accept, an interlocutory appeal pursuant to 28 U.S.C § 1292(b). *Id.* at 607. In extraordinary circumstances, it also can petition the court of appeals for a writ of mandamus. *Id.* Importantly, the Court

---

[8] *See also Richardson-Merrell, Inc. v. Koller,* 472 U.S. 424, 436 (1985) ("Implicit in § 1291 is Congress' judgment that the *district judge* has the primary responsibility to police the prejudgment tactics of litigants, and that the district judge can better exercise that responsibility if the appellate courts do not repeatedly intervene to second-guess prejudgment rulings.") (emphasis in original).

23

reiterated the "long-recognized option . . . for a party to defy a disclosure order and incur court-imposed sanctions." *Id.* at 608.

*Mohawk*'s reasoning about the effective reviewability of disclosure orders adverse to the attorney-client privilege may narrow the scope of the *Perlman* exception. More specifically, we will have to decide whether *Mohawk* prohibits applying the *Perlman* exception when the person asserting privilege is a party in the underlying litigation with recourse to other avenues of appellate review, as some other Courts of Appeals either have held or suggested. *See Holt-Orsted v. City of Dickson*, 641 F.3d 230, 238 (6th Cir. 2011) (holding that, after *Mohawk*, "where the privilege holder is a party to the litigation with recourse in a post-judgment appeal, . . . *Perlman* no longer affords jurisdiction to hear [an] interlocutory appeal"); *Wilson v. O'Brien*, 621 F.3d 641, 643 (7th Cir. 2010) (noting that "*Mohawk Industries* calls *Perlman* and its successors into question," and suggesting that, after-*Mohawk*, the *Perlman* exception no longer applies when the person asserting privilege is a "litigant" in the underlying litigation); *see also United States v. Krane*, 625 F.3d 568, 573 (9th Cir. 2010) (holding, in a case in which "neither the privilege holder nor the custodian of the relevant documents [were] parties to the underlying criminal proceedings," that "[t]he *Perlman* rule survives . . . *Mohawk*").

An order requiring the disclosure of privileged materials is as effectively reviewable, absent an immediate appeal, for subjects of a grand jury investigation as it is for parties in civil litigation. If the grand jury's investigation leads to an indictment and later a conviction, we can remedy an "improper disclosure of privileged material . . . by vacating the adverse judgment and remanding for a new trial in which the protected material and its fruits are excluded from

24

evidence." *Mohawk*, 130 S.Ct. at 606-07. Of course, a subject of a grand jury investigation may never be indicted. Appellants are correct that "[e]ven if the subject is charged, the charges may be dismissed or the subject may be acquitted following trial. In each of these circumstances, there would be no way to vindicate the privilege or protection that has been breached." Appellants' Br. at 27. The Court in *Mohawk*, however, rejected similar arguments in the civil litigation context. After an unfavorable privilege ruling, a civil litigant may nonetheless settle, obtain summary judgment, or win a favorable verdict, leaving the privilege broken and the District Court's ruling unchallenged.

The Court's reasoning in *Mohawk* underscores how denying ABC Corp. a *Perlman* appeal will still leave the company with sufficient (though admittedly not perfect) means for making its privilege claims. However, we leave for another day the broader question of whether *Mohawk* forecloses *Perlman* appeals when the privilege holder is a subject or target of an underlying grand jury investigation.

\* \* \* \* \*

For these reasons, we dismiss for lack of appellate jurisdiction.[9]

---

[9] For the sake of judicial economy, we have directed the Clerk to assign to this panel any further appeals in this matter.

*In re: Grand Jury*, No. 12-1697

VANASKIE, *Circuit Judge*, concurring in part and dissenting in part.

I agree with the majority that we lack jurisdiction to review the District Court's order to the extent that it requires production directly by ABC Corporation, because the ABC Corporation may obtain appellate jurisdiction over that portion of the order by standing in contempt. I write separately, however, because I believe that we have jurisdiction pursuant to the *Perlman* doctrine to review the District Court's order to the extent that it requires production by Blank Rome LLP ("Blank Rome") and LaCheen, Wittels & Greenberg, LLP ("LaCheen Wittels"), and therefore disagree with the majority's decision to dismiss this appeal in its entirety for lack of jurisdiction. *See Perlman v. United States*, 247 U.S. 7, 15 (1918). I would instead reach the merits and affirm.

## I.     Jurisdiction

ABC Corporation, John Doe 1, and John Doe 2 (collectively, the "Subjects") contend that we have jurisdiction under the *Perlman* doctrine because the Government subpoenaed the ABC Corporation and two law firms representing the Subjects, LaCheen Wittels and Blank Rome, for various documents concerning the Subjects. Despite the Subjects' claim of privilege in the documents, the District Court ordered production by both ABC Corporation and by the law firms. Because the District Court ordered

production in part by the law firms, the Subjects argue that the *Perlman* doctrine confers appellate jurisdiction. For the reasons set forth below, I agree with the majority that the *Perlman* doctrine does not confer jurisdiction to review the District Court's order to the extent that it requires production directly by ABC Corporation. I believe that the Subjects are correct, however, that we have jurisdiction pursuant to the *Perlman* doctrine to review the order insofar as it requires production by the law firms.[1]

A. The *Perlman* Doctrine

As discussed in the majority's opinion, a witness ordered to produce documents before a grand jury may not ordinarily bring an interlocutory appeal challenging the order requiring production. *See In re Grand Jury Proceedings* (*FMC Corp.*), 604 F.2d 798, 800 (3d Cir. 1979). To obtain review, the witness must instead stand in contempt and appeal the contempt order. *Id.*

The Supreme Court, however, carved out an exception, known as the *Perlman* doctrine, permitting privilege holders to bring interlocutory appeals of orders requiring production by third-party custodians. *See Perlman*, 247 U.S. at 15; *see also In re Grand Jury Proceedings* (*Cianfrani*), 563 F.2d 577, 580 (3d Cir. 1977); *In re Grand Jury Proceedings* (*FMC*

---

[1] I would not hold that we have jurisdiction to consider the Subjects' argument that the District Court abused its discretion in declining to state whether a particular individual testified before the grand jury. The Subjects fail to explain how this issue bears any relationship whatsoever to the *Perlman* doctrine.

*Corp.*), 604 F.2d at 800; *In re Grand Jury*, 111 F.3d 1066, 1076-77 (3d Cir. 1997); *In re Grand Jury*, 286 F.3d 153, 157 (3d Cir. 2002). In applying the *Perlman* doctrine, we reasoned that a non-subpoenaed privilege holder does not have the option of standing in contempt to obtain jurisdiction over an order directing production by a third-party custodian, because the order is not directed to the privilege holder. *See In re Grand Jury* (*C. Schmidt & Sons, Inc.*), 619 F.2d 1022, 1024-25 (3d Cir. 1980); *In re Grand Jury*, 111 F.3d at 1077. Moreover, a third-party custodian in possession of subpoenaed documents will more likely comply with a district court's order than stand in contempt to protect the privilege holder's rights. *See In re Grand Jury Proceedings* (*Cianfrani*), 563 F.2d at 580. Because the privilege holder cannot stand in contempt or force the third-party custodian to stand in contempt, the privilege holder becomes effectively "powerless to avert the mischief of the [district court's] order." *Perlman*, 247 U.S. at 13. To prevent this result, we have held that a district court order requiring production by a third-party custodian is final as to the privilege holder, and permit the privilege holder to take immediate appeal pursuant to 28 U.S.C. § 1291. *See In re Grand Jury* (*C. Schmidt & Sons, Inc.*), 619 F.2d at 1025 ("[W]hen a party, other than the one to whom a subpoena has been addressed, moves to quash the subpoena, the denial of his motion disposes of his claim fully and finally.") (citations omitted).

Applying the logic of *Perlman* to this appeal, I agree with the majority that the Subjects cannot appeal the portion of the District Court's order requiring ABC Corporation to produce the documents directly. ABC Corporation is an ordinary subpoenaed party, rather than a privilege holder challenging production by a third-party, with respect to the

3

portion of the District Court's order requiring its production.[2] It must therefore stand in contempt to confer jurisdiction over this part of the District Court's order.[3] *See In re Grand Jury Proceedings* (*FMC Corp.*), 604 F.2d at 800.

In my view, however, the portions of the District Court's order requiring production by the law firms directly are a different matter. With respect to the portions concerning the law firms, the Subjects are purported privilege holders challenging a district court order requiring production by third-party custodians. As in *In re Grand Jury* (*C. Schmidt & Sons, Inc.*), the Subjects cannot stand in contempt of the District Court's order as to the law firms, because that part of

---

[2] I recognize that John Doe 1 and John Doe 2 also appeal the District Court's order compelling production. They raise no argument, however, that they have a right to challenge the District Court's order to the extent that it requires production by ABC Corporation, or that their claims of privilege are independent of ABC Corporation's. *See In re Bevill, Bresler & Schulman Asset Mgmt. Corp.*, 805 F.2d 120, 124 (3d Cir. 1986) ("[A]ny privilege that exists as to a corporate officer's role and functions within a corporation belongs to the corporation, not the officer.") (citation omitted). I therefore draw no distinction based on John Doe 1's and John Doe 2's involvement in this appeal.

[3] The Subjects argue that the District Court included ABC Corporation in its order by mistake and that the District Court intended to require production only by the law firms. I agree with the majority, however, that if ABC Corporation wishes to make this argument on appeal, it must first stand in contempt.

4

the order is not directed to them. *See* 619 F.2d at 1024-25. The Subjects' appeal, with respect to the law firms, is thus more or less the same as the long line of cases in which we have applied the *Perlman* doctrine.

### B. Effect of the Order Against ABC Corporation

The majority distinguishes this appeal principally on the grounds that both the law firms and the ABC Corporation are subject to the District Court's order requiring production. Therefore, in the majority's view, ABC Corporation can obtain immediate appellate review by demanding that the law firms return the documents to it and by sustaining a contempt sanction. The majority's argument rests, in part, on its assertion that if the Subjects can appeal under *Perlman*, then any client will be able to bring an interlocutory appeal by giving its documents to its law firm.

I cannot agree with the majority's logic. The purpose of the *Perlman* doctrine, as discussed in Section I(A) *supra*, is to enable a privilege holder to appeal an order requiring production when he or she "lacks the opportunity to contest the subpoena by disobedience because it is not directed to him or her." *In re Grand Jury*, 111 F.3d at 1077 (quoting *In re Grand Jury Matter* (*Dist. Council 33 Health & Welfare Fund*), 770 F.2d 36, 38 (3d Cir. 1985)). That is exactly the situation that we now face with respect to the orders compelling production of the contested documents by the law firms. Because Blank Rome, rather than ABC Corporation, has physical custody over the documents, the Subjects cannot unilaterally stand in contempt. Regardless of ABC Corporation's intent to stand in contempt, Blank Rome can

5

comply with the District Court's order and produce the documents.

I disagree that ABC Corporation has the option of obtaining jurisdiction by taking physical custody of the documents and refusing to produce them to the Government. Although the majority rules out the possibility of the Government charging the law firms with obstruction of justice, it cannot rule out the possibility that the District Court will hold the law firms in contempt. The Government subpoenaed the law firms individually and moved to compel them to produce the documents. The District Court issued an order requiring production by the law firms directly. Transferring the documents back to ABC Corporation will not negate the law firms' duty to comply with the District Court's order. *See Couch v. United States*, 409 U.S. 322, 329 n.9 (1973) ("The rights and obligations of the parties bec[o]me fixed when [a] summons [is] served, and [a post-summons document] transfer [does] not alter them.") (citations omitted); *In re Grand Jury Empanelled*, 597 F.2d 851, 865 (3d Cir. 1979) (holding that an employer cannot defeat a subpoena served on its employee by taking the requested documents from the employee and claiming that the documents are no longer in the employee's possession); *United States v. Asay*, 614 F.2d 655, 660 (9th Cir. 1980) (stating that a recipient of a summons cannot defeat the summons by relinquishing possession of the requested documents); *United States v. Three Crows Corp.*, 324 F. Supp. 2d 203, 206 (D. Me. 2004) ("[T]he law does not allow a custodian of records to send [the requested documents] away after receiving a summons and then claim he cannot produce them, because they are no longer in his possession."). Accordingly, if the law firms ignore the District Court's order

6

and instead turn over the documents to ABC Corporation, they will be just as much in contempt as ABC Corporation.[4] *See Nilva v. United States*, 352 U.S. 385, 392 (1957) ("[A] criminal contempt is committed by one who, in response to a subpoena calling for corporation or association records, refuses to surrender them when they are in existence and within his control.") (citations omitted); Fed. R. Crim. P. 17(g) ("The court . . . may hold in contempt a witness who, without adequate excuse, disobeys a subpoena issued by a federal court in that district."); 28 U.S.C. § 1826(a) (authorizing district courts to impose civil contempt sanctions when "a witness . . . refuses without just cause shown to comply with an order of the court to testify or provide other information").

I recognize, as the majority highlights, that the Government proposed the document transfer, but I disagree that we can infer from the Government's proposal that it will forego seeking contempt sanctions against the law firms. As an initial matter, the Government has given us no indication that it will ask the District Court to release the law firms from

---

[4] The majority attempts to reduce the likelihood that the District Court will hold the law firms in contempt by cautioning that our Court will likely view contempt sanctions against the law firms under these facts as an abuse of discretion. Regardless of whether we may reverse contempt sanctions on appeal, however, we will be forcing the law firms to accept the possibility that the District Court will impose what may be severe contempt sanctions in the interim. As discussed in Section I(A) *supra*, the purpose of the *Perlman* doctrine is to avoid burdening the custodian with that possibility.

the order. Much to the contrary, Blank Rome informed us following oral argument that it contacted the Government regarding the proposed document transfer, but that the Government refused to permit any transfer until receiving our ruling.

The Government's hesitation regarding the document transfer is not surprising. The Government readily admits that it subpoenaed the law firms because it had difficulty serving ABC Corporation. If we effectively relinquish the law firms from the District Court's order by allowing them to turn over the documents to ABC Corporation without the possibility of sanctions, ABC Corporation will presumably again argue that it was never properly served. This argument, if successful, will prevent the Government from demanding the documents from *any* party, at least until it properly serves ABC Corporation. Given the significance placed by the Government on the order against the law firms, and the Government's apparent refusal to allow a document transfer thus far, I disagree that we can assume, without an express stipulation, that the Government will permit a document transfer without pursuing sanctions against the law firms.[5]

---

[5] During oral argument, the Government proposed that ABC Corporation name an employee within the jurisdiction to take the documents and for that employee to accept service on behalf of ABC Corporation. Although not explicit from the Government's argument, the Government would presumably release the law firms from the possibility of sanctions for disobeying the District Court's order as part of this arrangement. I would have no objection to dismissing for lack of jurisdiction if the parties entered into such an agreement. I would likewise have no objection to dismissing

The majority emphasizes that the law firms are ABC Corporation's agents, so they have a duty to return the documents to ABC Corporation upon ABC Corporation's demand. Although I agree in general that a client can require his or her attorney to return documents, I disagree that ABC Corporation can do so in light of the District Court's order. A client generally cannot require his or her attorney to violate a district court order to protect his or her privilege. An attorney, after asserting all non-frivolous objections to producing client confidences, may ethically comply with a court order requiring production. *See* Model Rules of Prof'l Conduct R. 1.6(6) & cmt. 13 (2010); Pa. Rules of Prof'l Conduct R. 1.6 & cmt. 19 (2011); *see also In re Grand Jury Proceedings in Matter of Fine*, 641 F.2d 199, 202 (5th Cir. 1981) (stating that an attorney may ethically reveal client confidences pursuant to a court order). Because the District Court's order requires the law firms to produce the

if the Government successfully requested that the District Court release the law firms from the order. Neither of these events, however, has occurred. Whether we have jurisdiction depends upon the facts existing at the time that we must determine jurisdiction. Because there is no doubt that a document transfer will expose the law firms to the possibility of contempt sanctions, and the *Perlman* doctrine provides jurisdiction when the custodian is subject to possible contempt sanctions, we have jurisdiction. We cannot avoid jurisdiction, and the concomitant responsibility to decide the merits of the case, based on the theoretical possibility that the parties might reach an agreement that would deprive us of jurisdiction.

9

documents, ABC Corporation cannot force the law firms to instead return the documents to it.

Moreover, I disagree that applying *Perlman* when the privilege holder is also subject to the District Court's order will enable any client to take a *Perlman* appeal by turning over all documents to his or her attorney. As the majority agrees, the Government may request documents by subpoena that are subject to the subpoena recipient's legal control. *See In re Grand Jury*, 821 F.2d 946, 951 (3d Cir. 1987) ("A party's lack of possession or legal control over documents requested by a subpoena is normally a valid defense to a subpoena and justification for a motion to quash."). As the Government appears to agree, a client maintains control over documents that he or she turns over to his or her current attorney, because the client may ordinarily request the documents' return. (Appellee's Br. 16) ("[T]he subjects [of the grand jury investigation] do not suggest that the privilege-holder corporation no longer has the ability to obtain its documents from [its lawyer]."); *see also Mercy Catholic Med. Ctr. v. Thompson*, 380 F.3d 142, 160 (3d Cir. 2004) (holding that control under Fed. R. Civ. P. 34(a) is "the legal right or ability to obtain the documents from another source upon demand"). In the majority of future cases, the Government will be able to avoid a *Perlman* appeal by subpoenaing records solely from the client-privilege holder and obligating the privilege holder to request his or her attorney to produce the documents. A *Perlman* issue arises in this instance only because the Government chose to subpoena the law firms

10

directly, thereby subjecting them to possible contempt sanctions should they refuse to comply.[6]

Finally, I am concerned that the majority's rule will effectively eviscerate the *Perlman* doctrine in all instances where, as here, the privilege holder can direct the custodian to produce the subpoenaed documents, but cannot necessarily prevent the custodian from *releasing* the documents in the event a court orders production. In such cases, the Government will have every incentive to subpoena both the privilege holder and the custodian, obtain orders against both, and use the order against the privilege holder to artificially prevent the privilege holder from taking a *Perlman* appeal. Creating such a loophole, in my view, is inconsistent with our Court's interpretation of *Perlman* as enabling privilege holders to obtain jurisdiction when they cannot obtain jurisdiction by standing in contempt.

### C. Effect of *Mohawk Industries, Inc. v. Carpenter*

Next, the Government contends that the Supreme Court's recent decision in *Mohawk Industries, Inc. v. Carpenter* abrogates *Perlman* in instances in which the

---

[6] As discussed *supra*, I appreciate that the Government subpoenaed the law firms because it was having difficulty subpoenaing ABC Corporation, and that similar situations may recur in the future. Part of the tradeoff to subpoenaing law firms directly, however, is the possibility of a *Perlman* appeal. Additionally, the Government concedes that there is no evidence suggesting that the law firms in this case took the documents in bad faith. We therefore do not need to address whether to apply *Perlman* in the event of bad faith conduct.

11

privilege holder is the subject or target of a grand jury investigation. *See* 130 S. Ct. 599, 603 (2009). Although the majority discusses this argument without relying on it, I would reach this argument and hold that *Mohawk Industries, Inc.* does not abrogate *Perlman* under these facts.

In *Mohawk Industries, Inc.*, the district court compelled Mohawk Industries, Inc. ("Mohawk") to produce communications with counsel in a civil suit, finding that Mohawk had waived its attorney-client privilege. *Id.* at 604. Mohawk appealed the order compelling production, asserting jurisdiction pursuant to the collateral order doctrine. *Id.* The Supreme Court held that the collateral order doctrine does not permit immediate appeal of "disclosure orders adverse to the attorney-client privilege." *Id.* at 609. The Supreme Court reasoned that "postjudgment appeals generally suffice to protect the rights of litigants and assure the vitality of the attorney-client privilege," because "[a]ppellate courts can remedy the improper disclosure of privileged material . . . by vacating an adverse judgment and remanding for a new trial in which the protected material and its fruits are excluded from evidence." *Id.* at 606-07.

Because *Mohawk Industries, Inc.* does not purport to overrule *Perlman*, it remains binding precedent post-*Mohawk Industries, Inc.* in at least some instances. Further, as the Ninth Circuit explains, "*Perlman* and *Mohawk* are not in tension," at least in the context of proceedings in which the privilege holder is a non-litigant. *United States v. Krane*, 625 F.3d 568, 572 (9th Cir. 2010). *Mohawk Industries, Inc.* holds only that civil litigants may not appeal orders adverse to the attorney-client privilege, because they can vindicate their rights by appealing from the final judgment. *Id.* Non-litigant

12

privilege holders, by contrast, cannot necessarily appeal from a final judgment.  *See Holt-Orsted v. City of Dickson*, 641 F.3d 230, 238 (6th Cir. 2011) (stating that although *Mohawk Industries, Inc.* narrows *Perlman* when the privilege holder is a litigant, non-litigants do not have recourse in a final judgment) (citing *Wilson v. O'Brien*, 621 F.3d 641, 643 (7th Cir. 2010)).  At a minimum, *Perlman* thus continues to afford jurisdiction in appeals by non-litigants.

Grand jury subjects, such as the privilege holders in this case, are non-litigants.  *See Cobbledick v. United States*, 309 U.S. 323, 327 (1940) ("[A] grand jury proceeding has no defined litigants . . . ."); *In re Witness before Special Oct. 1981 Grand Jury*, 722 F.2d 349, 351 (7th Cir. 1983) ("[T]here are no parties to a grand jury investigation . . . .").  Although the Government argues that grand jury subjects are equivalent to litigants because they can appeal a final decision if they are convicted, the grand jury need not return an indictment.  We therefore have no guarantee that grand jury subjects will ever have the opportunity to appeal a final decision.

I understand the majority's point that an order requiring production is not necessarily any more reviewable in the civil context than in the grand jury context, because the parties in civil litigation may settle or receive a favorable decision that does not address the privilege claims.  The parties in civil litigation, however, have at least some degree of control in shaping the litigation and can, in many instances, decide whether or not to leave their privileges broken.  For example, a privilege holder in a civil suit can decide whether or not to settle.  Grand jury subjects, unless later charged,

13

have no equivalent control over the proceedings and no final judgment from which to appeal.

Furthermore, *Perlman* expressly provides that a privilege holder in the grand jury context need not wait to "seek a remedy at some other time and in some other way." 247 U.S. at 13. The privilege holder can instead challenge the order immediately. *Id.* Applying the logic of *Mohawk Industries, Inc.* to a grand jury proceeding and holding that grand jury subjects must wait to appeal a final decision is thus the equivalent of holding that *Mohawk Industries, Inc.* abrogates *Perlman* entirely. Absent a Supreme Court decision explicitly overruling *Perlman*, I do not believe that we should assume that *Perlman* is no longer binding precedent.

### D. Effect of Current Representation by the Law Firms

Finally, although not addressed by the majority, the Government argues that the *Perlman* doctrine does not apply in this instance because the law firms are not "[d]isinterested [t]hird [p]arties" due to their current representation of the Subjects. (Appellee's Br. 15.) I believe that the *Perlman* doctrine applies to current attorneys and would reject this argument.

As an initial matter, our Court's interpretation of the *Perlman* doctrine does not require strict disinterest, at least in the sense of requiring total non-affiliation with the privilege holder.[7] We have instead tended to focus our analysis on

---

[7] The description of the *Perlman* doctrine as applying to "disinterested third parties" stems from dicta in *Church of*

14

whether the privilege holder "is in a position to control the [subpoenaed custodian's] decision whether to produce the records," and on whether the third-party's personal stake in the matter is substantial enough for it to likely stand in contempt to protect the privilege holder's rights. *In re Grand Jury Matter*, 802 F.2d at 99; *see In re Grand Jury* (*C. Schmidt & Sons, Inc.*), 619 F.2d at 1024-25 (holding that the privilege holder's employees are third-parties under *Perlman* because employees are unlikely to stand in contempt to protect their employer). Applying this framework, we have already held that a privilege holder's former attorney qualifies as a third-party custodian under the *Perlman* doctrine, reasoning that a former attorney is not guaranteed to stand in contempt to protect his or her former client's privilege. *See In re Grand Jury Proceedings* (*FMC Corp.*), 604 F.2d at 800-01.

I believe, as do the majority of other circuits that have addressed this issue, that there is no reason to apply a different rule to current attorneys.[8] *See, e.g.*, *In re Grand*

_____

*Scientology v. United States* that our Court has not adopted. 506 U.S. 9, 18 n.11 (1992).

[8] A small number of circuits do not hold that current attorneys are categorically third-party custodians under *Perlman*, instead applying *Perlman* "when circumstances make it unlikely that an attorney would risk a contempt citation in order to allow immediate review of a claim of privilege." *In re Sealed Case*, 754 F.2d 395, 399 (D.C. Cir. 1985); *see also In re Grand Jury Proceedings*, 616 F.3d 1172, 1180 n.11 (10th Cir. 2010) ("A court may, but is not required to, draw an inference that a current attorney is more likely to risk contempt in order to protect a client's privilege than a former attorney or a third party."). I would reach the same

15

*Jury Subpoenas*, 123 F.3d 695, 699 (1st Cir. 1997) ("[W]e adopt the majority rule and apply the *Perlman* exception to those cases wherein a client seeks immediate appeal of an order compelling production of a client's records from his attorney."); *In re Grand Jury Proceedings in Matter of Fine*, 641 F.2d at 203 (holding that current attorneys qualify as third-parties under *Perlman*); *In re Grand Jury Proceedings* (*Gordon*), 722 F.2d 303, 307 (6th Cir. 1983) ("This Court . . . joins the majority of other Circuits in applying the *Perlman* exception in those cases wherein a client seeks immediate appeal of an order compelling testimony from his attorney."); *In re Klein*, 776 F.2d 628, 632 (7th Cir. 1985) (applying the *Perlman* doctrine to current attorneys); *In re Grand Jury Proceedings*, 655 F.2d 882, 885 (8th Cir. 1981) ("[T]he *Perlman* exception is available to a client-intervenor when he is appealing an order compelling testimony or documents from his attorney."); *In re Grand Jury Proceedings*, 689 F.2d 1351, 1352 n.1 (11th Cir. 1982) (explaining that the Eleventh Circuit is bound by the Fifth Circuit's rule holding that attorneys are third-parties under *Perlman*). While a client's interests may be more closely aligned with his or her current attorney than with a former attorney, a client cannot control whether his or her attorney chooses to stand in contempt. As discussed in Section I(B) *supra*, after asserting all non-frivolous arguments against disclosing a client's privileged information, attorneys are generally permitted to comply with a district court order compelling production. *See* Model Rules of Prof'l Conduct R. 1.6(6) & cmt. 13 (2010).

---

result under this rule as under the categorical approach, because Blank Rome has already indicated that it will not stand in contempt.

Moreover, to the extent that current attorneys are "interested parties," they, like former attorneys, are unlikely to be so interested that they will stand in contempt to protect their client's privilege. *See In re Grand Jury Proceedings in Matter of Fine*, 641 F.2d at 203 ("we can say without reservation that some significant number of client-intervenors might find themselves denied all meaningful appeal by attorneys unwilling to" stand in contempt on their client's behalf). Accordingly, because an attorney need not, and probably will not, stand in contempt to protect his or her client's privilege, I believe that our Court's longstanding interpretation of the *Perlman* doctrine requires finding that current attorneys are third-parties.

Additionally, requiring attorneys to stand in contempt to enable their clients to appeal unnecessarily fosters conflicts of interest between attorneys and their clients. As the First Circuit explained in overruling its prior decision excluding attorneys from the *Perlman* doctrine, requiring attorneys to stand in contempt "pits lawyers against their clients" by requiring attorneys to choose between protecting their clients' interests and protecting themselves against potentially serious contempt sanctions. *In re Grand Jury Subpoenas*, 123 F.3d at 699 (citing *United States v. Edgar*, 82 F.3d 499, 507-08 (1st Cir. 1996)). I share the First Circuit's view that placing attorneys in this predicament "hinders the fair representation of the client." *Id.*

I am aware that the Ninth Circuit does not ordinarily permit *Perlman* appeals when the custodian is the privilege holder's current attorney. *See, e.g.*, *In re Grand Jury Subpoena*, 825 F.2d 231, 237 (9th Cir. 1987) (declining to apply the *Perlman* doctrine when the custodian is the

17

privilege holder's current attorney). I cannot agree, however, with the Ninth Circuit's logic. The Ninth Circuit implies that a current attorney is more likely to stand in contempt than a former attorney, because a current attorney "is both subject to the control of the person or entity asserting the privilege and is a participant in the relationship out of which the privilege emerges." *Id.* (quoting *In re Grand Jury Subpoena Served upon Niren*, 784 F.2d 939, 941 (9th Cir. 1986)). This reasoning disregards the fact that a privilege holder's control over his or her attorney does not extend to deciding whether his or her attorney stands in contempt. Because the custodian's likelihood of standing in contempt is the relevant type of control under the *Perlman* doctrine, I do not find the Ninth Circuit's reasoning to be persuasive and would hold that we have jurisdiction.

## II. Merits

Instead of dismissing for lack of jurisdiction, I would affirm the District Court's decision on the merits. The Subjects raise a plethora of legal arguments challenging the District Court's order compelling production, none of which has any merit. The Subjects' chief contention is that the District Court erred in finding that the crime-fraud exception vitiates their purported attorney-client and work-product privileges because, in their view, the District Court applied "an improper standard" for determining whether the crime-fraud exception applies. (Appellants' Br. 45.) I do not agree that the District Court committed any such error.

The crime-fraud exception overrides the attorney-client and work-product privileges "only when the legal advice 'gives direction for the commission of [a] future fraud

18

or crime.'" *In re Grand Jury Subpoena*, 223 F.3d 213, 217 (3d Cir. 2000) (quoting *Haines v. Liggett Grp. Inc.*, 975 F.2d 81, 90 (3d Cir. 1992)). The Government may invoke the crime-fraud exception by "mak[ing] a prima facie showing that (1) the client was committing or intending to commit a fraud or crime, . . . and (2) the attorney-client communications were in furtherance of that alleged crime or fraud." *Id.* (citations omitted). The Government satisfies its prima facie showing by "present[ing] . . . 'evidence which, if believed by the fact-finder, would be sufficient to support a finding that the elements of the crime-fraud exception were met.'" *Id.* (quoting *Haines*, 975 F.2d at 95-96).

The Subjects argue that, in deciding whether the Government satisfied its prima facie case, the District Court improperly relied on what they assert was dicta from our decision in *In re Grand Jury Investigation*, 445 F.3d 266, 275 (3d Cir. 2006), instead of requiring the Government to present evidence "sufficient to support a finding that the elements of the crime-fraud exception were met." *In re Grand Jury Subpoena*, 223 F.3d at 217 (quoting *Haines*, 975 F.2d at 90). Specifically, the Subjects contend that the District Court improperly lowered the standard for the Government's prima facie case by requiring evidence "demonstrating [only] a reasonable basis to suspect the perpetration of a crime." (S.A. 31) (quoting *In re Grand Jury Investigation*, 445 F.3d at 275).

The District Court included both prongs of the prima facie case and the "sufficient to support a finding" standard in its opinion. (S.A. 16.) It then thoroughly reviewed the record, including the submissions from both the Government and from the Subjects, to ascertain whether the Government showed adequate evidence of a crime or fraud. Thus,

19

regardless of whether the District Court should not have used the "reasonable basis to suspect" language, its comprehensive review of the record demonstrates that it applied a standard as high as, if not higher than, the "sufficient to support" standard. Accordingly, I would reject the Subjects' argument concerning whether the District Court applied the correct standard for assessing the crime-fraud exception. As for the Subjects' remaining arguments, I would affirm for substantially the reasons given by the District Court in its thoughtful opinion.